Eugene D. O'Sullivan, Sr., Omaha, Neb. (Eugene D. O'Sullivan, Jr., and David S. Lathrop, Omaha, Neb., on the brief), for appellant.

Edward J. Tangney, Asst. U. S. Atty., Omaha, Neb. (Joseph T. Votava, U. S. Atty. and John E. Deming, Asst. U. S. Atty., Omaha, Neb., on the brief), for appellee.

Before SANBORN, JOHNSEN and RIDDICK, Circuit Judges.

JOHNSEN, Circuit Judge.

**KING v. UNITED STATES.**

No. 14570.

United States Court of Appeals
Eighth Circuit.

April 29, 1953.

There grew up in the administration of early criminal justice in England a practice called "approvement", under which a person, indicted for treason or capital felony, was permitted, on arraignment, to acknowledge the offense, implicate any accomplices he may have had, and have the latter stand trial for the crime. If the guilt of the accomplice was established, either on a trial by battle or on one to a jury, the approver was regarded as being entitled to a pardon.[1]

---

1. The practice of approvement had at the time of Blackstone "been long disused."

In addition, statutes were from time to time enacted, providing directly for the right to a pardon in certain classes of cases of disclosure and assistance by an accused, resulting in the conviction of others.[2]

Beyond this, a practice also was evolved in commitment proceedings before the justices of the peace, of encouraging and admitting one accused of crime to become "king's evidence" against his associates, upon an implied holding-out by the justice of the peace, which the trial courts usually honored, that, if full and true disclosure was made and trial testimony was given, the charges against such an accused would not be prosecuted.

Discussion of these matters is contained in 4 Blackstone's Commentaries, pp. 330, 331. All of this ultimately crystallized into the general concept and declaration that, if any prisoner made full and true disclosure and testified freely against an accomplice, he would have an equitable claim to the exercise of the king's mercy, should be afforded the opportunity to present that claim, and ought to have his request for a pardon assisted with a recommendation. Rex v. Rudd, 1 Cowp. 331, 1 Leach 115.

Notice of the practice, which thus historically had had existence in the English system prior to the Revolution, was taken by the Supreme Court in Ex parte Wells, 1855, 18 How. 307, 59 U.S. 307, 15 L.Ed. 421. Full discussion of it later was made in United States v. Ford, and the companion cases thereof, commonly referred to as the Whiskey Cases, 1878, 99 U.S. 594, 25 L.Ed. 399.

The Whiskey Cases purported to give recognition to the practice, on the basis of its having had, as the Court thought, general acceptance and adoption by the trial courts of this country. Only the expression in a few, scattered, early cases, however, such as People v. Whipple, 9 Cow., N.Y., 707, Commonwealth v. Knapp, 10 Pick., Mass., 477, Foster v. People, 18 Mich. 266, and United States v. Lee, Fed.Cas.No. 15,588, 4 McLean 103, and some texts, seems to suggest that the concept ever has had acceptance by the American trial courts, either state or federal, that there exists any judicial duty or obligation to stay proceedings against such an accomplice until he has had an opportunity to apply for a pardon, or that he is entitled to a recommendation for that purpose.

There have no doubt been situations, in which a trial court has seen fit to afford a prisoner the opportunity to seek a pardon, and perhaps some in which the judge even has engaged in making recommendation. But this, where it has occurred, has been regarded, we think, as having been done on the basis of personal consideration or motivation and not as a matter of official obligation or function. The concept that a judge, except as he may feel prompted by proper personal consideration or motivation in some special situation, has any duty to take steps to assist an accomplice, who has cooperated in the prosecution of his associates, in making application for a pardon or obtaining consideration thereof, cannot be said, we believe, to have ever had any established root in the American judicial system.

If, however, it could be thought, on the basis of the discussion in the Whiskey Cases, supra, that some trace of that concept may have existed in the federal court system in the past, we are satisfied that there is no vestige of it remaining, or having any reason to remain, since the enactment of the Federal Probation Act, Act of March 4, 1925, 43 Stat. 1259, as revised and amended, 18 U.S.C.A. § 3651 et seq., with the policy and the powers underlying it.

That Act was designed to give the courts the opportunity and the responsibility in criminal cases of dealing directly with all considerations involved in serving "the ends of justice and the best interest of the public, as well as the defendant," as a matter of probation. We do not of course mean that this grant of judicial authority has any relationship to or effect upon the executive prerogative of pardon, but it has at least not left any need surviving, in the interest of justice, for judicial concern

---

2. Repeal subsequently was made of these special statutes.

or endeavor to have a confessed violator resort to that process as the only means available to enable him to escape being subjected to punishment.

What has been said is dispositive of the appeal that is before us. The case is one in which a defendant, after entering a plea of nolo contendere, made application to the trial court to have all further proceedings against him stayed until he had had an opportunity to make application to the President for a pardon. The court denied the application and pronounced sentence upon him.

An appeal has been attempted to be taken from the denial of the application and from the pronouncing of sentence. The basis claimed in the application for the stay sought was that the defendant and another had been accomplices in procuring and distributing some counterfeit Federal Reserve Notes; that defendant had made a full and true disclosure of their dealings to the Government officers; and that he further had testified for the Government on the trial of his accomplice. His contention here is that this entitled him, under the expression in the Whiskey Cases, supra, 99 U.S. 594, 25 L.Ed. 399, to have the proceedings against him stayed and to be afforded the opportunity to make application for executive pardon, in accordance with the practice which has been discussed. As presented in his brief, "it was (the trial judge's) duty to hear and determine the facts relating to appellant's cooperation and if he did so cooperate fully, fairly and truthfully then it was the Court's duty to recommend Executive clemency and the duty of the United States Attorney to aid appellant in securing same."

It follows from our previous discussion that the trial court's denial of the application is without any basis for claiming legal error or attacking the sentence. The fact also may be incidentally noted, to which the trial court called attention, that four months had elapsed between the entry of the plea and the pronouncing of sentence, in which the defendant had taken no steps to seek a pardon, if he thought one

was obtainable, and that he "now shows no intention or disposition to proceed without an order of the court deferring sentence indefinitely."

Affirmed.