[Crim. No. 22125. Second Dist., Div. Two. June 12, 1973.]

THE PEOPLE, Plaintiff and Appellant, v.
MARY THERESA BRUNNER, Defendant and Respondent.

**COUNSEL**

Joseph P. Busch, District Attorney, Harry Wood and Eugene D. Tavris, Deputy District Attorneys, for Plaintiff and Appellant.

Howard L. Weitzman, under appointment by the Court of Appeal for Defendant and Respondent.

**OPINION**

**FLEMING, J.**—The grand jury indicted Mary Brunner for the murder of Gary Hinman, whereupon Brunner moved to dismiss the indictment on the claim she had been promised immunity from prosecution by the district attorney in return for her testimony about the Hinman murder. The superior court dismissed the indictment and permanently restrained Brunner's prosecution for the Hinman murder. The People have appealed.

## I

In December 1969 and March 1970 at Eau Claire, Wisconsin, Brunner met representatives of the Los Angeles County Sheriff and the Los Angeles

District Attorney, who offered her immunity from prosecution in return for her testimony relating to the Hinman murder. In April 1970 Brunner appeared in Los Angeles before the grand jury and at the trial of Robert Beausoleil for the Hinman murder, and testified that in July 1969 she, Denise Atkins, and Robert Beausoleil had held Hinman captive in his house in Malibu for three days, beaten him, stabbed him, and finally smothered him; that during part of Hinman's ordeal, Charles Manson with a sword and Bruce Davis with a knife had been present in the house. As a consequence of her testimony Beausoleil was convicted of the Hinman murder.

In May 1970 Beausoleil moved for a new trial, offering an affidavit by Brunner which said in part: "Everything I testified to at the Robert Beausoleil trial, and the Grand Jury was not true and did not happen as so testified." At the hearing on Beausoleil's motion, Brunner first said her affidavit was true. She then recanted and said her testimony before the grand jury and at the trial was true. The court denied the motion for a new trial.

In March 1971 Brunner testified at the penalty phase of the trial of Manson, Atkins, Leslie Van Houten, and Patricia Krenwinkel for the Tate-La Bianca murders. She denied participation in the Hinman murder.

In August 1971 Brunner testified at the trial of Manson for the Hinman murder. She again denied participation in the murder and disclaimed any knowledge of participation by Manson. Under further questioning about the murder, she invoked her privilege against self-incrimination. The prosecution then introduced the testimony implicating Manson that she had given at the Beausoleil trial, and Manson was convicted of the Hinman murder.

In September 1971 the grand jury indicted Brunner for the Hinman murder.

## II

The People raise a procedural point, contending the dismissal was void because reasons for the dismissal had not been set forth in the court's minutes as required by Penal Code section 1385.[1] We do not think the point well-taken. The order signed by the court and filed in the record

---

[1]Section 1385: "The court may, either of its own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed. The reasons of the dismissal must be set forth in an order entered upon the minutes. No dismissal shall be made for any cause which would be ground of demurrer to the accusatory pleading."

clearly states it was based on Brunner's motion for immunity from prosecution. The statutory requirement for entry of reasons for dismissal on the court's minutes is designed to protect the public interest against corrupt or improper dismissals (*People* v. *Superior Court,* 13 Cal.App.3d 672, 678 [91 Cal.Rptr. 651]), and corruption is not an issue here. The trial court's order set forth its reasons for dismissal in sufficient fashion to enable a reviewing court to rule on the correctness of the order. Any remand to require the trial court to expand its reasoning for entry upon the court minutes would be an idle act which we decline to undertake.

### III

The district attorney next challenges the substantive basis for the order. He contends that Brunner has no right to immunity because the only authority for a grant of immunity is found in the immunity statute, and in this instance the requirements of the statute were not met.

Penal Code section 1324 provides:

"(a) In any felony proceeding, . . . if a person refuses to answer a question or produce evidence of any other kind on the ground that he may be incriminated thereby, and if the district attorney of the county . . . in writing requests the superior court for that county to order that person to answer the question or produce the evidence, a judge of the superior court shall set a time for hearing and order the person to appear before the court and show cause, if any, why the question should not be answered or the evidence produced, and the court shall order the question answered, or the evidence produced unless it finds that to do so would be clearly contrary to the public interest, or could subject the witness to a criminal prosecution in another jurisdiction, and that person shall comply with the order. *After complying,* and if, but for this section, he would have been privileged to withhold the answer given or the evidence produced by him, that person shall not be prosecuted or subjected to penalty or forfeiture . . . . . But he may nevertheless be prosecuted or subjected to penalty or forfeiture for any perjury, false swearing or contempt committed in answering, or failing to answer, or in producing, or failing to produce, evidence in accordance with the order." (Italics added.)

We agree with the district attorney that section 1324, the witness immunity act, regulates the grant of immunity from criminal prosecution. The section applies in two distinct factual situations. The first arises when a witness not himself within the target area of the pending investigation or prosecution refuses to testify or produce evidence on the ground of possible incrimination. In such instances, the prosecution is primarily con-

cerned with securing an answer and only secondarily concerned with the nature of the answer, either because only one answer is possible or because the sanction of a perjury prosecution furnishes a sufficient guaranty of the truth of the witness's answer. The grant of immunity to a reluctant witness located outside the target area of the inquiry follows a relatively straightforward course and may be effected by a relatively simple procedure.

But the statute also applies to the prospective witness who himself is situated within the target area of the pending investigation or prosecution. Typically, this witness is a party to a multiparty crime, but his conduct is considered less culpable than that of others involved, and his testimony is believed necessary for the successful prosecution of his fellow wrong-doers. Under these circumstances the prosecutor may be willing to promise immunity to the lesser offender in order to secure testimony with which to pursue the greater offenders. A bargain may be struck under which immunity is promised the lesser offender in return for testimony that will unravel the crime and bring the greater offenders to justice. Section 1324 sets out the procedure for court supervision and control of such bargains.

In negotiating[2] and carrying out an agreement with target-area witnesses for immunity from prosecution in return for testimony two dangers are involved. The first is that of the treacherous witness—who promises to testify in return for a grant of immunity from prosecution and then, having secured immunity, does not testify in the manner he said he would or refuses to testify beyond a certain point. It is a fact of life that the quality of veracity and honor among thieves and murderers leaves something to be desired, and an overly trusting district attorney may find that in granting immunity to one he could have prosecuted he has exchanged gold for brass.

The other danger in the exchange of immunity for testimony is the obverse of the first—a witness may be so influenced by his hopes and fears

---

[2]"Applications of the kind are not always to be granted, and in order to acquire the information necessary to determine the question, the public prosecutor will grant the accomplice an interview, with the understanding that any communications he may make to the prosecutor will be strictly confidential. Interviews for the purpose mentioned are for mutual explanation, and do not absolutely commit either party; but if the accomplice is subsequently called and examined, he is equally entitled to a recommendation for executive clemency. Promise of pardon is never given in such an interview, nor any inducement held out beyond what the before-mentioned usage and practice of the courts allow.

"Prosecutors in such a case should explain to the accomplice that he is not obliged to criminate himself, and inform him just what he may reasonably expect in case he acts in good faith, and testifies fully and fairly as to his own acts in the case, and those of his associates. When he fulfills those conditions he is equitably entitled to a pardon, and the prosecutor, and the court if need be, when fully informed of the facts, will join in such a recommendation." (*Whiskey Cases* (1878) 99 U.S. 594, 603-604 [25 L.Ed. 399, 403].)

that he will promise to testify to anything desired by the prosecution in order to obtain a grant of immunity. Because the satisfaction of the prosecutor is the witness's ticket to freedom, the prosecutor, by dangling the promise of immunity, can put the words he wishes into the witness's mouth. This danger is especially grave when the witness knows he is expected to give particular testimony, absent which he will not receive the promised immunity.

These twin dangers point up the desirability for court approval of immunity bargains with target-area witnesses. Properly used, section 1324 is broad enough to protect the prosecutor against double-dealing and enable him to make an enforceable agreement with the most duplicitous witness. Properly used, the section also protects the witness against prosecution pressure to color existing or create additional testimony in order to obtain previously promised immunity. The statute establishes a procedure under which the bargain between prosecutor and witness, each to perform certain acts in the future, can be made a matter of record so that dishonesty, equivocation, and misunderstanding may be minimized. In our view whenever target-area witnesses have been promised immunity in return for their promise to testify, the prosecutor's request for court approval should set out the terms of the agreement, the subject-matter of the testimony, the proceedings at which it will be given, the representations of the witness (or his counsel) as to the specific content of his testimony, and the promise of the witness to testify fully and truthfully in return for the promised grant of immunity. On court approval of the agreement immunity will be granted the witness *after he has complied with the representations of the agreement.*[3]

As with plea bargains, terms of a promise of immunity should appear clearly on the record and be supported by court order. Full disclosure of the terms of the bargain not only protects against double-dealing, coercion, and misunderstanding (so apparent in this case), but it enables an impartial judicial officer to review the propriety of the immunity bargain itself. (See *People* v. *West*, 3 Cal.3d 595, 609-610 [91 Cal.Rptr. 385, 477 P.2d 409].) The statute "preserves to the prosecuting authorities the principal control

[3]We note that section 1324 grants immunity from prosecution for "any fact or act concerning which [the witness] was required to answer." This transactional immunity is broader than the testimonial immunity (prohibition of the use and derivative use of the compelled testimony) offered by statutes in other jurisdictions (e.g., 18 U.S.C.A. § 6002). A statute that compels testimony in return for a grant of immunity from use of the compelled testimony does not violate the witness's right against incrimination (*Kastigar* v. *United States* (1972) 406 U.S. 441, 462 [32 L.Ed.2d 212, 227, 92 S.Ct. 1653]), and possesses the advantage that the witness may be compelled to testify on a particular occasion without prior agreement about the number of occasions on which his testimony will be required.

over grants of immunity. . . . But the court retains ample authority to prevent major abuses. The veto power [serves] as a salutory check against the possible overzealousness, unwisdom, or corruption of local prosecutors." (Commissioner's Prefatory Note, Model State Witness Immunity Act, 9C U.L.A. 192.) True enough, a promise of immunity from prosecution in exchange for particular testimony amounts to a promise by the witness to testify in a certain way, and the witness who does not so testify will not acquire the sought-for immunity. To that extent the witness is vulnerable to the charge that his testimony has been bought. (Cf. *People* v *Green,* 102 Cal.App.2d 831 [228 P.2d 867].) Yet while these factors bear heavily on the *weight* to be given the witness's testimony, they do not impinge upon the validity of the bargain itself.

In sum, when an immunity agreement is entered into under court sanction, the witness becomes absolutely entitled to immunity "provided it appears that he acted in good faith and that he testified fully and fairly." (*Whiskey Cases* (1878) 99 U.S. 594, 595, 598, 599, 600, 602, 604, 605 [25 L.Ed. 399, 400, 401, 402, 403].) We see no reason why the witness's good faith may not be made a matter of record in advance of his appearance on the stand by requiring him to disclose the nature of his prospective testimony.[4]

## IV

■    Although section 1324 was not followed in this case, we conclude that the People are estopped from arguing noncompliance. It would be anomalous to permit the People, represented by the district attorney, to argue that an earlier agreement entered into by the district attorney was void for lack of compliance with a statute of whose existence the district attorney must have been aware.    ■    "[I]f a prosecutor, in the furtherance of justice, makes an agreement to withhold prosecution, the court may, upon proper showing, even in the absence of statute authority, honor the undertaking." (*State* v. *Reed* (1969) 127 Vt. 532 [253 A.2d 227, 232]; see also 1 Wharton's Criminal Law and Procedure, p. 396; Annot., 13 A.L.R.2d 1439.)

The People argue that Brunner's proper remedy lies in the ancient proceeding of *approvement,* wherein the indictment stands but prosecution is delayed with the understanding that defendant has an equitable right

---

[4]"Cases undoubtedly have arisen where the accomplice, having refused to comply with the conditions annexed to his equitable right, has been subsequently tried and convicted, it being first determined that he has forfeited his equitable title to protection by his bad faith and false representations." (*Whiskey Cases,* at p. 605 [25 L.Ed. at p. 403].)

to recommendation for pardon from the chief executive. (*Whiskey Cases,* 99 U.S. 594, 599-600 [25 L.Ed. 399, 401-402].) If it ever existed in American criminal procedure approvement has universally fallen into disuse. (*King* v. *United States* (8th Cir. 1953) 203 F.2d 525.) Moreover, approvement has no place in California procedure because the Governor's power to pardon becomes operative only after conviction and sentence, and not before. (Cal. Const., art. V, § 8; Pen. Code, § 4800 et seq.)

## V

■ Assuming their initial agreement was properly enforceable, the People contend that Brunner did not fulfill her part of the agreement and hence they are not bound to fulfill theirs. The argument runs: The People bargained for Brunner's truthful testimony in proceedings arising from the Hinman murder;[5] Brunner's testimony in the Manson trial contradicted her testimony in the Beausoleil trial; accordingly, at one of the trials she must have been untruthful; therefore, she did not give the bargained-for truthful testimony.

We look on the matter somewhat differently, because in our opinion the People got substantially what they bargained for. The purpose of their bargain was to secure murder convictions of the most reprehensible of the Hinman killers. Brunner testified at the Beausoleil trial, and Beausoleil was convicted. She testified at the Manson trial, was impeached by her Beausoleil trial testimony, and Manson was convicted. The People, however, argue that convictions are immaterial, pointing out they are not permitted to bargain for results but only for full and truthful testimony (*People* v. *Walther,* 27 Cal.App.2d 583, 591 [81 P.2d 452]; *People* v. *Green,* 102 Cal.App.2d 831, 834-839 [228 P.2d 867]; *People* v. *Lyons,* 50 Cal.2d 245, 265-266 [324 P.2d 556].) While it is indisputable that the People can bargain only for testimony and not for results, the issue here is not the validity of the bargain but the extent of a party's performance under the bargain. Performance can be measured, at least in part, by results. Since the People got their hoped-for results through the use of Brunner's testimony, we conclude, albeit somewhat pragmatically, that enough of the bargain was kept to make it operative. We note that validation of the grant of immunity from prosecution for murder does not bar prosecution for perjury and that the grand jury has indicted Brunner on four counts of perjury arising out of her testimony in these cases.

---

[5]The People concede they did not bargain for testimony in the Tate-La Bianca murders.

## VI

■ The People's final contention is that Brunner waived her claim to immunity by invoking her privilege against self-incrimination at the Manson trial and refusing to testify. Had the People complied with section 1324 in the manner we have outlined, this argument might possess validity, for Brunner's refusal to testify would have amounted to a repudiation of her agreement. Yet in circumstances where the People have received substantially what they bargained for, we are not inclined to find a technical waiver by Brunner of substantial rights acquired under an oral agreement whose terms she may not have fully understood.

The order dismissing the indictment and restraining Brunner's further prosecution for the Hinman murder is affirmed.

Roth, P. J., and Herndon, J., concurred.

A petition for a rehearing was denied July 11, 1973, and appellant's petition for a hearing by the Supreme Court was denied August 8, 1973.