THE STATE OF MONTANA, Plaintiff and Respondent, *v.*
BILLY NARAY EVANS, Defendant and Appellant.

No. 14107.
Submitted June 16, 1978.
Decided Aug. 3, 1978.
582 P.2d 1211.

Thomas A. Baiz, Jr. (argued), Great Falls, for defendant and appellant.

Mike Greely, Atty. Gen., Allen B. Chronister, Asst. Atty. Gen. (argued), Helena, J. Fred Bourdeau, County Atty., Great Falls, for plaintiff and respondent.

MR. JUSTICE HARRISON delivered the opinion of the Court.

Appellant, Billy Naray Evans, filed a petition for writ of habeas corpus in District Court, Cascade County, alleging he was sentenced for an offense in disregard of an immunity agreement. A hearing on the petition was held on July 18, 1977. On October 19, 1977, the District Court, Honorable H. William Coder presiding, issued a memorandum opinion and order denying the petition.

On October 27, 1977, appellant filed a motion to amend the

order denying the petition. The matter was submitted to the District Court upon briefs of the parties. The motion was denied by an order of the District Court dated December 1, 1977.

This Court on May 30, 1978, in Cause No. 13801, issued an order affirming the memorandum opinion and order of Judge Coder denying the writ of habeas corpus.

Appellant lodges this appeal from both the order denying the petition for writ of habeas corpus and the order denying his motion to amend. The appeal will therefore be handled as an original application for supervisory control.

In early February 1974, appellant gave two statements to the office of the Cascade County attorney, Great Falls, Montana, concerning the murder of John Walsh, Jr. At the time of the statements, appellant was in the custody of the Cascade County sheriff's office on suspicion of felony possession of dangerous drugs. The statements given by appellant were self-incriminating to some extent and, in addition, implicated Andra Phillip Stewart and Larry Vample in the murder. J. Vaughan Barron, appointed counsel for defendant, and Thomas Clary, then a deputy Cascade County attorney, were present at the taking of the statements. Appellant was then released on his own recognizance.

Immediately thereafter, Andra Phillip Stewart was arrested and charged with deliberate homicide and two counts of aggravated kidnapping. Stewart was subsequently incarcerated in the Cascade County jail. Larry Vample was also picked up for questioning concerning the death of John Walsh, Jr.

On June 17, 1974, the Cascade County attorney's office requested that appellant give deposition testimony to preserve said testimony, should something unforeseen happen to him. Appellant, however, on the advice of counsel for Stewart who was about to go to trial, refused to testify—thus invoking his right against self-incrimination after being advised he might still be subject to further prosecution. Vample also refused to be deposed.

The following day, June 18, 1974, both appellant and Vample were charged with deliberate homicide and two counts of aggravated kidnapping.

On June 19, 1974, appellant retained Ralph Randono as counsel and thereafter entered a plea of not guilty to the charged offenses. On August 19, 1974, appellant was subpoenaed by the State to testify at the trial of Andra Phillip Stewart. A short time later, on August 29, 1974, appellant entered a plea of guilty to mitigated deliberate homicide.

The Stewart trial commenced on September 13, 1974. Appellant testified therein on behalf of the State. Stewart was convicted of the crime of aggravated kidnapping, and was sentenced to 100 years in the Montana State Prison.

Prior to his sentencing, on November 12, 1974, appellant moved to vacate the sentencing and dismiss the three felony counts pending against him, seeking to enforce an alleged immunity agreement between himself and the State. A hearing followed, resulting in the denial of appellant's motion. Appellant was thereafter sentenced to 40 years in the Montana State Prison.

The critical issue in this case involves a review of a factual or mixed law and a fact determination of whether there existed an immunity agreement between appellant and the State, and if so, the extent and details of the agreement and whether appellant actually complied with the agreement. While six separate issues are set forth, the determination of this critical issue is controlling to the deposition of the case.

Appellant first argues that the District Court erred in finding there was no oral immunity agreement between himself and the State. Appellant's basic contention is that at the time he gave his original statements to the authorities in February 1974, he was promised total immunity if he would cooperate with the State and give testimony against Andra Phillip Stewart at Stewart's trial.

The State argues that it can be just as reasonably inferred from all the circumstances that there was no immunity agreement, thus, providing a basis for the District Court's factual determination:

(a) Appellant replaced his initial counsel at the time of the deposition.

(b) There is no reference to any total immunity agreement on the record.

(c) Appellant pleaded guilty to mitigated deliberate homicide, stating at the time that no promises or representations had been made.

(d) Appellant's counsel moved the court for an·immunity order pursuant to section 95-1807, R.C.M.1947, immediately prior to appellant's subpoenaed testimony at the Stewart trial.

(e) The total immunity claim first became of record by appellant's November 6, 1974 motion to dismiss, made approximately two months following the Stewart trial.

(f) Judge Nelson, at the time of appellant's sentencing, was referring to "immunity" in the sense of a plea bargain, from which appellant received actual benefit.

(g) At the evidentiary hearing held on July 18, 1977, pursuant to appellant's petition for writ of habeas corpus, appellant's counsel Randono as well as the State's attorney testified there was no total immunity agreement.

(h) At the time of the original arrest of appellant, prior to his making the statement, he was held on several felony charges which were later dropped. The alleged immunity claimed could just as well have been plea bargaining on those counts, and appellant failed to prove he had· been given any oral immunity by the office of the county attorney.

The evidence here clearly supports the finding of the trial court that there had been plea bargaining directed at the charges of deliberate homicide and kidnapping charges. Appellant for his testimony against Stewart was allowed to plead guilty to the charge of mitigated deliberate homicide, thereby reducing both the sentence and the possibility of a death penalty.

The trial court's finding that there was no immunity bargain is entitled to a presumption of correctness on appeal. *Anderson v. Gile* (1946), 119 Mont. 182, 185, 172 P.2d 583. In reviewing the evidence, all conflicts should be resolved in favor of the determination below. *State v. Cor* (1964), 144 Mont. 323, 344, 396 P.2d 86. If there is "any substantial evidence" of record tending to support the determination below, this Court should affirm said deter-

mination upon appeal. *State v. Stoddard* (1966), 147 Mont. 402, 408, 412 P.2d 827. We find substantial evidence supporting the District Court.

Next appellant argues that during the sentencing, Judge Nelson made certain references to "immunity representations". Appellant alleges that such statements constituted a factual determination which became res judicata. Thus, it is maintained that Judge Coder was later estopped from resolving, as he did, the issue of immunity by finding that no agreement in fact existed. Appellant cites, in this regard, cases holding that where a question of fact is distinctly put in issue, litigated and resolved between the parties, the doctrines of res judicata and collateral estoppel preclude relitigation of such issue in future proceedings, even though the cause of action be different. *Caterpillar Tractor Co. v. International Harvester* (3rd Cir. 1941), 120 F.2d 82; *People v. Cornier* (1964), 42 Misc.2d 963, 249 N.Y.S.2d 521; *State v. Hopkins* (1923), 68 Mont. 504, 219 P. 1106.

The State answers that the statements of Judge Nelson do not constitute a factual determination necessary to support estoppel as a matter of law. *Hoag v. New Jersey* (1958), 356 U.S. 464, 78 S.Ct. 829, 2 L.Ed.2d 913; 46 Am.Jur.2d, Judgments, § 426; Cf. *Ashe v. Swenson* (1970), 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469. Judge Nelson found, as a matter of fact, that there was no immunity agreement barring the sentencing of appellant, and we find no error in this finding.

Appellant next argues that District Court erred in finding that even though there was an oral promise of immunity, the promise does not operate as a bar to the prosecution of appellant. Having found no oral promise of immunity but rather a plea bargaining arrangement, this argument is without merit.

Reliance is placed on various state and federal court decisions holding that a prosecutor's oral promise of immunity, offered in exchange for self-incriminating testimony, is valid and enforceable. The cases cited employ a variety of bases to reach said result.

In *People v. Brunner* (1973), 32 Cal.App.3d 908, 108 Cal.Rptr.

501, the California Supreme Court, in holding valid as immunity agreement which did not comply with the California Witness Immunity Act, stated:

"* * * It would be anomalous to permit the People, represented by the district attorney, to argue that an earlier agreement entered into by the district attorney was void for lack of compliance with a statute of whose existence the district attorney must have been aware. * * *" 108 Cal.Rptr. 506.

It has also been held that an oral immunity agreement vests in a defendant the equitable right to its enforcement under an express or implied contract theory. *Lowe v. State* (1909), 111 Md. 1, 73 A. 637. Courts have also noted that public policy and the ends of justice mandate recognition of immunity agreements between prosecutor and defendant, especially because a defendant acting in good faith gives up fundamental and valuable rights in the bargain. *State v. Hingle* (1961), 242 La. 844, 139 So.2d 205. See, *State v. Hargis* (Fla.App.1976), 328 So.2d 479, dissenting opinion.

The State answers that there existed no total immunity agreement, but rather, a plea bargain which was fully honored, in full compliance with the law. *Santobello v. New York* (1971), 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427. See also, *Application of Parham* (1967), 6 Ariz.App. 191, 431 P.2d 86.

It is further noted that there is a line of authority contrary to that advanced by appellant, holding that oral immunity agreements do not operate as a bar to prosecution. As stated by the majority in *State v. Hargis*, supra:

"An immunity agreement, without the consent of the court, may not be pled in bar of adjudication of guilt * * *. Under an agreement between a state attorney and a defendant, made without the consent of the court, a defendant may be placed on trial in violation of the agreement. * * *" 328 So.2d 480.

See also: *Cortez v. State* (Okl.Cr.1966), 415 P.2d 196; *State v. Crow* (Mo.1963), 367 S.W..2d 601.

Appellant further argues, assuming the existence of the immunity agreement, that he complied with his portion of the agree-

ment by testifying against Stewart and the State should be required to perform its end of the bargain by granting him immunity. Appellant cites *People v. Brunner*, supra, for the rule that where a defendant performs the specified conditions of an immunity bargain, whether such bargain is valid or invalid, the State will be held to its promise performance.

We find that the only bargain supported by the record is the plea bargain which was fully executed by both sides and that appellant received a reduced charge in return for his testimony and the dismissal of the other felony charges.

During the course of the Stewart trial, the State subpoenaed appellant's testimony. Appellant argues that his giving testimony in response to the subpoena triggered transactional immunity under section 95-1807, R.C.M.1947. This section provides:

"Before or during trial in any judicial proceeding a justice of the supreme court or judge of the district court, upon request by the attorney prosecuting or counsel for the defense, may require a person to answer any question or produce any evidence that may incriminate him. If a person is required to give testimony or produce evidence, in accordance with this section, in any investigation or proceeding he cannot be prosecuted or subjected to any penalty or forfeiture, other than a prosecution or action for perjury or contempt, for or on account of any transaction, matter or thing concerning which he testified or produced evidence."

Appellant relies on *State v. Carroll* (1973), 83 Wash.2d 109, 515 P.2d 1299, for the proposition that one who is subpoenaed to testify in a criminal proceeding is subject to statutory immunity. However, there are differences between the Washington statute and section 95-1807 that limit the application of the case. The former appears self-executing, requiring no order or action of the court in order that it be invoked. Section 95-1807, in contrast, provides that the judge require testimony upon the application of counsel and must, therefore, be specifically invoked. Here, no such application was made, nor did the district judge specifically order appellant to testify at the Stewart trial.

Appellant last contends that his guilty plea to mitigated deliberate homicide did not relieve the State from honoring its portion of the alleged immunity agreement. Appellant first contends, in this regard, that his plea was involuntary, being induced by a fear of a possible death penalty under the pending felony counts.

Even assuming the voluntariness of the plea, appellant contends that his performance of the immunity bargain occurred prior to sentencing, thus giving rise to transactional immunity and stripping the State of the power to penalize him.

The State relies on *Tollett v. Henderson* (1973), 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235, in which the United States Supreme Court held:

"* * * When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. * * *" 411 U.S. 267, 93 S.Ct. 1608, 36 L.Ed.2d 243.

■ The appellant in *Tollett* sought to raise, in a subsequent habeas corpus proceeding, alleged unconstitutional selection of the grand jury panel which had indicted him. The Supreme Court held this ground was waived by his guilty plea. *Tollett* is controlling in this case.

The ultimate question in this case is whether there is sufficient evidence of record to support the finding of the District Court that there existed no immunity agreement; that the agreement made was in actuality a plea bargain, which was fully honored.

We find the evidence sufficient and affirm.

MR. CHIEF JUSTICE HASWELL and JUSTICES SHEA and SHEEHY concur.