[No. A122776. First Dist., Div. One. Jan. 29, 2010.]

THE PEOPLE, Plaintiff and Appellant, v.
C.S.A., Defendant and Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part I, Factual and Procedural Background.

## COUNSEL

Stephan R. Passalacqua, District Attorney, William S. Mount, Robert A. Maddock and Michael Li, Deputy District Attorneys, for Plaintiff and Appellant.

Stephen M. Gallenson, under appointment by the Court of Appeal, for Defendant and Respondent.

## OPINION

**BANKE, J.**—This case requires us to decide whether criminal proceedings can be dismissed on the basis of a "cooperation" agreement between a defendant and local police department, not authorized by the district attorney. The trial court found law enforcement officers promised defendant a new felony charge and related probation violations would be dismissed if he worked with and provided information to the officers. The court further found defendant did both. On the basis of these findings, the trial court "enforced" the cooperation agreement and dismissed the felony charge and related probation violations. However, as we discuss herein, the law enforcement officers had no authority to promise the felony charge and related probation violations would be dismissed, and defendant's reliance on that unauthorized promise had no constitutional consequence permitting dismissal on due process grounds.[1]

### I. FACTUAL AND PROCEDURAL BACKGROUND[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### II. ANALYSIS

In the trial court, the parties relied principally on federal cases both in support of and in opposition to defendant's motion to dismiss the criminal

---

[1] The trial court sealed all documents relevant to defendant's motion to dismiss the criminal proceedings and closed all hearings on the motion. In accordance with the California Rules of Court, the sealed documents and transcripts of the closed hearings were filed under seal in this court. (See Cal. Rules of Court, rule 8.46(c).) As we will discuss, the procedural and substantive issues raised on appeal are issues of first impression in California. We have filed both a redacted and sealed opinion. Our redacted opinion, which is part of the public record, does not include names or identifying facts. Accordingly, while we are aware of Penal Code sections 953 and 959, given the highly unusual circumstances of this case and in conformance with the order of this court, we have used a protective nondisclosure caption. (See, e.g., *People v. S. P.* (1980) 115 Cal.App.3d Supp. 12 [170 Cal.Rptr. 478].) Our unredacted, sealed opinion is filed concurrently with this redacted opinion.

[*] See footnote, *ante*, page 773.

proceedings. The trial court likewise relied principally on federal cases in its ruling on the motion. This is understandable given the paucity of California cases discussing whether a criminal charge can be dismissed on the basis of an agreement, not authorized by the district attorney, wherein a law enforcement officer promises dismissal if the defendant cooperates.[2]

As the parties' briefing in the trial court, and on appeal, reflects, however, many federal circuit courts have addressed the analogous issue of whether a dismissal promise made by a federal law enforcement officer, but not authorized by a federal prosecutor, is enforceable. We agree these federal cases are persuasive authority, particularly on constitutional issues. (*People v. Burton* (1989) 48 Cal.3d 843, 854, fn. 2 [258 Cal.Rptr. 184, 771 P.2d 1270]; *People v. Bradley* (1969) 1 Cal.3d 80, 86 [81 Cal.Rptr. 457, 460 P.2d 129].) As we discuss, these cases uniformly hold federal law enforcement officers have no independent authority to promise federal criminal charges will be dismissed and therefore such promises generally are not enforceable. They further hold that before an unauthorized promise to dismiss will be enforced on due process grounds, the defendant's reliance thereon must have constitutional consequence. Numerous cases from other states are also in accord on both points.

We conclude the law enforcement officers here had no authority to promise defendant the felony charge and related probation violations would be dismissed upon his cooperation. We also conclude this unauthorized promise cannot be enforced on due process grounds because defendant's reliance thereon did not have any constitutional consequence.

*Standard of Review*

The standard of review in cases involving "cooperation" agreements depends on the issue raised. Whether the parties entered into an agreement and the terms of such usually are questions of fact reviewed under the substantial evidence standard. (See *U.S. v. McInnis* (1st Cir. 2005) 429 F.3d 1, 5 (*McInnis*); *U.S. v. Carrillo* (9th Cir. 1983) 709 F.2d 35, 37 (*Carrillo*) ["The district court was called upon to make a factual determination as to the nature and scope of an agreement between the government and Carrillo."].) Likewise, whether a party carried through with its part of the agreement generally

---

[2] Numerous California cases have dealt with prosecutorial offers of immunity secured by application under Penal Code section 1324 or made informally. (See, e.g., *Griego v. Superior Court* (2000) 80 Cal.App.4th 568, 573–577 [95 Cal.Rptr.2d 351]; *People v. Superior Court (Perry)* (1989) 213 Cal.App.3d 536, 539–541 [261 Cal.Rptr. 665]; *People v. Brunner* (1973) 32 Cal.App.3d 908, 914–917 [108 Cal.Rptr. 501].) However, as we discuss, an offer of immunity made by a prosecutor is fundamentally different from a promise of dismissal made by a law enforcement officer.

is a question of fact reviewed under the substantial evidence standard. (See *Carrillo, supra,* 709 F.2d at p. 37; *U.S. v. Rodman* (1st Cir. 1975) 519 F.2d 1058, 1059 (*Rodman*).)

However, when a cooperation agreement embraces a promise to dismiss or reduce charges, whether the promise is authorized and enforceable usually is a legal question reviewed de novo. (*U.S. v. Flemmi* (1st Cir. 2000) 225 F.3d 78, 84 (*Flemmi*) [whether FBI agents could promise defendant use and derivative immunity was "a pure question of law"]; see *Thomas v. Immigration & Naturalization Service* (9th Cir. 1994) 35 F.3d 1332, 1337–1341 (*Thomas*) [due process claim focusing on whether federal prosecutor had authority to make promise about disposition of immigration proceedings reviewed de novo].)

A trial court's determination as to the appropriate remedy for breach of a cooperation agreement, i.e., dismissal of the charge or some other sanction, generally is reviewed for abuse of discretion. (*U.S. v. Williams* (9th Cir. 1986) 780 F.2d 802, 803 (*Williams*).) A court abuses its discretion if it applies incorrect legal principles, as well as when its decision exceeds the bounds of reason. (*Westside Commission for Independent Living, Inc. v. Obledo* (1983) 33 Cal.3d 348, 355 [188 Cal.Rptr. 873, 657 P.2d 365]; *Miyamoto v. Department of Motor Vehicles* (2009) 176 Cal.App.4th 1210, 1218 [98 Cal.Rptr.3d 459].)

*Cooperation Agreements*

We begin by reviewing some basic principles about prosecutorial promises, on the one hand, and cooperation agreements, on the other. A formal grant of immunity conferred by a prosecutor must be honored. (See *Kastigar v. United States* (1972) 406 U.S. 441, 460 [32 L.Ed.2d 212, 92 S.Ct. 1653]; *Griego v. Superior Court, supra,* 80 Cal.App.4th at p. 574.) A prosecutor's promise, accepted by a defendant in consideration of a change of plea, likewise must be honored. (See *Santobello v. New York* (1971) 404 U.S. 257, 262 [30 L.Ed.2d 427, 92 S.Ct. 495] (*Santobello*); *Thomas, supra,* 35 F.3d at p. 1337 ["It has long been the law that the government's failure to keep a commitment which induces a guilty plea requires that judgment be vacated and the case remanded."].)

■ A cooperation agreement, as discussed in the federal cases and as we discuss here, is different from these prosecutorial assurances in that it generally is an agreement between a defendant and a law enforcement agency. (See *Flemmi, supra,* 225 F.3d at p. 84.) However, a cooperation agreement is analogous to a plea agreement in a number of respects. (*Thomas, supra,* 35 F.3d at p. 1337.) As with a plea agreement, "[t]he government is held

to the literal terms of [a cooperation] agreement, and ordinarily must bear responsibility for any lack of clarity." (*Ibid.*) And, like a plea agreement, "an agreement to cooperate may be analyzed in terms of contract law standards." (*Carrillo, supra,* 709 F.2d at p. 36.) However, the courts will not "follow blindly the law of contracts" where that body of law does "not provide a sufficient analogy and mode of analysis." (*Id.* at pp. 36–37, fn. 1.)

■ "[A] defendant who seeks specifically to enforce a promise, whether contained in a plea agreement or a freestanding cooperation agreement, must show both that the promisor had actual authority to make the particular promise and that he (the defendant) detrimentally relied on it." (*Flemmi, supra,* 225 F.3d at p. 84; accord, *San Pedro v. U.S.* (11th Cir. 1996) 79 F.3d 1065, 1068 (*San Pedro*); *Thomas, supra,* 35 F.3d at p. 1337 ["Enforcement of the agreement requires that the person making the promise be authorized, and that the promisee rely on the promise to his detriment."]; *U.S. v. Fuzer* (7th Cir. 1994) 18 F.3d 517, 520–521; *U.S. v. Streebing* (6th Cir. 1993) 987 F.2d 368, 372 (*Streebing*).) "If either part of this showing fails, the promise is unenforceable." (*Flemmi, supra,* 225 F.3d at p. 84; accord, *San Pedro, supra,* 79 F.3d at p. 1068; *Streebing, supra,* 987 F.2d at p. 372; *Williams, supra,* 780 F.2d at pp. 803–804.)

There is a "narrow" exception to this requisite showing, where failure to enforce an *unauthorized* cooperation agreement would render the prosecution "fundamentally unfair." (*Flemmi, supra,* 225 F.3d at p. 88, fn. 4; *Williams, supra,* 780 F.2d at p. 803 ["An exception has been recognized where, although the United States Attorney was not a party to a cooperation agreement, breach of the agreement rendered a prosecution fundamentally unfair."].)

To invoke this exception, a defendant must show not only detrimental reliance on the unauthorized promise, but reliance of constitutional consequence implicating due process—for example, where the defendant gives up his right to counsel or right to not incriminate himself on the basis of a promise to dismiss if he cooperates. (See *Williams, supra,* 780 F.2d at pp. 803–804 [exception not applicable where defendant not induced to incriminate himself, furnish information useful to government in developing case against him, or plead guilty]; *Johnson v. Lumpkin* (9th Cir. 1985) 769 F.2d 630, 634, fn. 8 ["where constitutional or statutory safeguards are surrendered in exchange for an unauthorized promise of immunity" promise may be enforced]; *U.S. v. Cameron* (D.Or., Nov. 30, 2006, No. 02-60113) 2006 WL 3491012, *8–*9 (*Cameron*) [exception not applicable where information provided by defendant did not form basis of federal charges against him].)

Even when this limited exception applies, the remedy for breach of an unauthorized cooperation agreement usually is a sanction short of dismissal. (See *Streebing, supra,* 987 F.2d at pp. 371–373 [no dismissal where government did not use information obtained from defendant against him]; *State of North Carolina v. Sturgill* (1996) 121 N.C.App. 629 [469 S.E.2d 557, 568–569] (*Sturgill*) [exclusion of evidence, rather than dismissal of charges, was proper remedy for defendant's reliance on unauthorized cooperation agreement; "we are not required, as a result of the 'constable's blunder,' to place defendant in a better position than he enjoyed prior to making the agreement with the police"].)

*Pretrial Motion to Dismiss*

The People first mount a procedural attack, arguing defendant could not make a pretrial motion to dismiss based on the cooperation agreement. They principally rely on *U.S. v. Doe* (2d Cir. 1995) 63 F.3d 121 (*Doe*). However, *Doe* is distinguishable. In *Doe,* the conduct underlying the criminal charges occurred *after* and *pursuant* to a cooperation agreement between the defendant and federal agents. (*Id.* at pp. 122–124.) The defendant therefore could raise a "public authority" defense to the charge, i.e., that the agreement required him to engage in the criminal conduct to protect his status as a confidential informant. (*Id.* at p. 124.) The Second Circuit held this affirmative defense had to be interposed at trial and was not properly raised by way of a pretrial motion to dismiss. (*Id.* at p. 125.) The circuit court expressly distinguished cases in which a pretrial motion to dismiss is based on an agreement "granting the defendant immunity for past criminal conduct." (*Ibid.*)[3]

Here, in contrast to *Doe,* the conduct giving rise to the criminal charge and probation violations occurred *before* defendant even discussed, let alone entered and acted pursuant to, a cooperation agreement. Defendant thus has no "public authority" defense to the charge and probation violations based on the agreement, and his pretrial motion to dismiss therefore did not implicate any issue that would be tried during prosecution of these criminal matters. Accordingly, defendant could raise the cooperation agreement by way of pretrial motion.

---

[3] Other cases cited by the People also are distinguishable. (*U.S. v. Aleman* (2d Cir. 2002) 286 F.3d 86, 90–91 [whether defendant complied with immunity agreement offered by prosecutor was "precisely the question" a jury would decide in connection with one of the counts of the indictment; therefore pretrial motion to dismiss indictment on basis of agreement would have been improper]; *U.S. v. Blackwell* (D.N.J. 1997) 954 F.Supp. 944, 954–955 [evidence pertaining to statute of limitations defense was intertwined with evidence pertaining to alleged offense; therefore pretrial motion to dismiss was improper].)

*Authority to Promise Criminal Charge Would Be Dismissed*

The trial court found defendant and the local police department entered into a cooperation agreement, the essence of which was that if defendant supplied certain information, the criminal charge and probation violations would "go away." On appeal, the People do not seriously take issue with the trial court's finding. They set out in a footnote in their opening brief the law enforcement officers' testimony that the only representation made to defendant was that they would advise the district attorney defendant had cooperated and see if there was any leniency the prosecution might be willing to extend, but it would be up to the prosecutor how defendant's cooperation would affect the criminal proceedings. However, the People do not expressly attack the trial court's finding on substantial evidence grounds. Accordingly, for purposes of appeal, we assume the existence of a cooperation agreement between the local police department and defendant.

With respect to the issue of the police department's authority to promise the criminal proceedings would be dismissed, the trial court found defendant "was never told that the police department did not have the authority to make the case go away or that the [d]istrict [a]ttorney has the right to decide whether a case is prosecuted or not." The court also purportedly found a local officer "on behalf of the [department]" had "apparent authority" to promise the criminal charge and probation violations would be dismissed "because of the agency relationship between law enforcement and the [d]istrict [a]ttorney." Regardless of the nomenclature used by the trial court, this latter finding is actually a legal conclusion, and it is incorrect.

Numerous federal circuit courts have addressed whether federal law enforcement officers have authority to bind federal prosecutors by way of cooperation agreements and uniformly have held they do not. As these courts have explained, "[a]s a general rule, doctrines such as estoppel and apparent authority are not available to bind the federal sovereign." (*Flemmi, supra,* 225 F.3d at p. 85.) Accordingly, " '[e]stoppel and apparent authority normally will not substitute for actual authority to bind the United States government.' " (*San Pedro, supra,* 79 F.3d at p. 1068, quoting *Thomas, supra,* 35 F.3d at p. 1338.)

The "inquiry into the scope" of a federal law enforcement officer's authority to bind a federal prosecutor must therefore "be framed in terms of actual authority." (*Flemmi, supra,* 225 F.3d at p. 85; accord, *San Pedro, supra,* 79 F.3d at pp. 1068–1069; *Thomas, supra,* 35 F.3d at p. 1338.) "Actual authority may be conferred either expressly or by necessary implication." (*Flemmi, supra,* 225 F.3d at p. 85; accord, *San Pedro, supra,* 79 F.3d at pp. 1068–1069.) "In the law of agency, actual authority takes two forms:

(1) express authority, and (2) authority that is implied or incidental to a grant of express authority." (*Thomas, supra*, 35 F.3d at p. 1338.) Express authority to bind a governmental entity flows from an explicit grant of power, for example, from a statute or duly enacted regulation. (See *Flemmi*, at p. 85.) In most cases no statute or regulation empowers a federal law enforcement officer to bind a federal prosecutor. (*Ibid.*) Accordingly, "the lens of inquiry narrows to a consideration of implied authority." (*Ibid.*)

"[I]n the case of a federal agent, authority to do an act may be implied when that act is integral to the tasks assigned to him or otherwise necessary for the due accomplishment of those tasks." (*Flemmi, supra*, 225 F.3d at p. 85.) The federal courts have differed to some degree in their view of when an act is "integral" to an assigned task. (*Ibid.*; cf. *San Pedro, supra*, 79 F.3d at pp. 1068–1072 [holding promise by assistant U.S. Attorney regarding defendant's immigration proceeding not authorized and not binding on INS] & *Thomas, supra*, 35 F.3d at pp. 1337–1341 [holding the contrary].) However, these courts uniformly have concluded the performance of investigatory duties by federal law enforcement officers are "meant to complement, not curb" federal prosecutors' "performance of the prosecutorial function." (*Flemmi*, at pp. 86–87.) As the First Circuit summarized, "[t]he short of it is that the power to prosecute plainly includes the power not to prosecute (and, thus, the power to grant use immunity), whereas the power to investigate does not necessarily encompass (or even reasonably imply) the power to grant use immunity." (*Id.* at p. 87.)

Thus, in *Flemmi*, the First Circuit held a promise not to prosecute made by an FBI agent was not binding on the federal prosecutor. (*Flemmi, supra*, 225 F.2d at pp. 84–88.) Other circuit courts have reached the same conclusion with respect to like promises made by federal law enforcement personnel. (See *McInnis, supra*, 429 F.3d at p. 5 [deputy marshal had no authority to promise defendant would not be prosecuted]; *U.S. v. Fuzer, supra*, 18 F.3d at pp. 520–521 [same, as to ATF agents]; *Streebing, supra*, 987 F.2d at p. 373 [same, as to FBI agent]; *U.S. v. Kettering* (11th Cir. 1988) 861 F.2d 675, 676 [same, as to DEA agent]; *U.S. v. Hudson* (9th Cir. 1979) 609 F.2d 1326, 1329 (*Hudson*) [same, as to Secret Service agent]; *Cameron, supra*, 2006 WL 3491012 at pp. *7–*8 [local police officer had no authority to promise defendant would not be federally prosecuted]; *U.S. v. Blackmon* (M.D.N.C., July, 21, 2005, No. 1-05CR82-2) 2005 WL 1719106, *5–*6 (*Blackmon*) [state police and DEA agents had no authority to promise defendant would not be federally prosecuted].) Other state courts have done so, as well. (See *State of Delaware v. Smith* (Del.Super.Ct. 2002) 809 A.2d 1174, 1176–1177 & fn. 7 [local police officer had no authority to promise defendant charges "would be dropped" and citing numerous cases from other states with like holdings].)

"This line of cases makes intuitive sense: [¶] 'If the rule were otherwise, a minor government functionary hidden in the recesses of an obscure department would have the power to prevent the prosecution of a most heinous criminal simply by promising immunity in return for the performance of some act which might benefit his department. Such a result could not be countenanced.' " (*Flemmi, supra*, 225 F.3d at pp. 87–88, quoting *Dresser Industries, Inc. v. U.S.* (5th Cir. 1979) 596 F.2d 1231, 1236–1237 [holding SEC (U.S. Securities and Exchange Com.) agents had no authority to promise defendant would not be investigated by Department of Justice].)

█ The reasoning of these federal cases applies equally to a promise by local and state law enforcement officers that a state criminal charge will be dismissed if the defendant cooperates. Just as federal prosecutors are invested with the prosecutorial power of the federal government, state and local prosecutors are invested with the prosecutorial power of the state. (See *People v. Eubanks* (1996) 14 Cal.4th 580, 588 [59 Cal.Rptr.2d 200, 927 P.2d 310] [" '[t]he prosecution of criminal offenses on behalf of the People is the sole responsibility of the public prosecutor . . . [who] ordinarily has sole discretion to determine whom to charge, what charges to file and pursue, and what punishment to seek' "]; *Dix v. Superior Court* (1991) 53 Cal.3d 442, 451–452 [279 Cal.Rptr. 834, 807 P.2d 1063].) And just as federal law enforcement officers have no independent authority to make promises about the filing and prosecution of federal criminal charges, state and local law enforcement officers have no independent authority to make promises about the filing and prosecution of state criminal charges. (See *People v. Vasila* (1995) 38 Cal.App.4th 865, 874–875 [45 Cal.Rptr.2d 355] [officer's promise not to institute federal prosecution was not an authorized promise of leniency and rendered confession invalid]; *People v. Anderson* (1980) 101 Cal.App.3d 563, 575–576 [161 Cal.Rptr. 707] [contrasting "false promises" of leniency by police officers with promises of leniency "made by persons authorized to make them"].)

█ Defendant relies heavily, as did the trial court, on *Carrillo, supra*, 709 F.2d 35. In *Carrillo*, the Ninth Circuit affirmed the dismissal of an indictment on the ground the defendant fulfilled his obligations under a cooperation agreement with the DEA. The defendant supplied information about certain drug traffickers but refused to testify. Finding the cooperation agreement did not require the defendant to do so, the district court granted his motion to dismiss on the ground the "government" had breached the agreement. The Ninth Circuit upheld the dismissal as within the district court's discretion. (*Id.* at p. 37.) The "government" did not raise, nor did the circuit court address, the issue of the DEA's authority to promise the defendant would not be prosecuted if he cooperated. The "government" likewise did not raise, nor did the circuit court address, whether the defendant's reliance on the promise had any constitutional consequence, allowing for its enforcement

under due process principles. A case is not authority for a proposition not raised or addressed. (See *People v. Mendoza* (2000) 23 Cal.4th 896, 915 [98 Cal.Rptr.2d 431, 4 P.3d 265].)

Furthermore, Ninth Circuit cases both before and after *Carrillo* have addressed both issues. As we have discussed, these cases hold, as do cases by other federal circuit courts, that federal law enforcement officers have no authority to make promises about federal prosecution and that enforcement of an unauthorized promise under due process principles requires detrimental reliance of constitutional magnitude. (See *Thomas, supra,* 35 F.3d at p. 1340 [distinguishing promise by assistant U.S. Attorney from promises by "some official of lesser authority" that are not binding on federal prosecutors]; *Williams, supra,* 780 F.2d at pp. 803–804; *Hudson, supra,* 609 F.2d at p. 1329; see also *Blackmon, supra,* 2005 WL 1719106 at p. *6, fn. 3 [noting *Carrillo* "failed to address" distinction between promise made by prosecutor and promise made by law enforcement officer].) Accordingly, *Carrillo* adds nothing to the analysis of the issues in this case.[4]

■ It is undisputed the district attorney did not authorize the promise by the local and state law enforcement officers here that the criminal charge and probation violations would "go away" if defendant provided certain information to them. The trial court erred as a matter of law in invoking the doctrine of "apparent authority" to fill this gap. As we have discussed, "apparent authority will not suffice in this context." (*Thomas, supra,* 35 F.3d at p. 1338.) On this record, it is a pure question of law whether the local and state law enforcement officers had authority to promise the criminal proceedings would be dismissed if defendant cooperated. We hold, following the analogous federal authority, that they had no such authority.

*Enforcement of Unauthorized Promise on Due Process Grounds*

■ Since the law enforcement officers' promise of dismissal was unauthorized, the question becomes whether the promise nevertheless is enforceable on due process grounds. As we have discussed, this is a "seldom-seen" exception (*Flemmi, supra,* 225 F.3d at p. 88, fn. 4), which applies only where the defendant's detrimental reliance on the promise has constitutional consequence, for example, where the defendant forgoes the right to counsel or the right against self-incrimination. (See *Rodman, supra,* 519 F.2d at p. 1059 [on basis of SEC's promise to "strongly recommend" no prosecution, defendant provided incriminating statements]; *Sturgill, supra,* 469 S.E.2d at p. 559 [on

---

[4] The cases cited by defendant, and by the trial court, involving promises by *prosecutors* (e.g., *Santobello, supra,* 404 U.S. 257; *U.S. v. Minnesota Mining & Manufacturing Co.* (8th Cir. 1977) 551 F.2d 1106; *U.S. v. Garcia* (9th Cir. 1975) 519 F.2d 1343; *U.S. v. Hallam* (9th Cir. 1973) 472 F.2d 168) are similarly inapposite for the reasons we have discussed above.

basis of police officer's promise defendant would not be charged as a "habitual felon," defendant admitted involvement in charged break-ins].) Where the defendant's reliance does not have such profound consequence, due process is not implicated and an unauthorized promise to dismiss criminal charges is not enforceable. (See *Williams, supra*, 780 F.2d at pp. 803–804; *Streebing, supra*, 987 F.2d at pp. 371–373; *Cameron, supra*, 2006 WL 3491012 at pp. *8–*9.)

In *Williams*, for example, the defendant was arrested for stealing a computer from his employer, the Veterans Administration (VA). (*Williams, supra*, 780 F.2d at p. 803.) The VA personnel director promised that, if the defendant resigned, he would write to the United States Attorney and recommend dismissal of the charges. (*Ibid.*) The defendant then resigned, but the letter sent by the VA's attorney did not recommend dismissal. Rather, it suggested avenues of further investigation. (*Ibid.*) The personnel director later spoke with the United States Attorney by phone and recommended dismissal. (*Ibid.*) The Ninth Circuit panel first observed, "a promise made by a government employee other than the United States Attorney to recommend dismissal of an indictment cannot bind the United States Attorney." (*Ibid.*) The court next concluded the unauthorized promise did not render the criminal prosecution "fundamentally unfair." (*Ibid.*) "Williams was not induced by the agreement to incriminate himself, to furnish information useful to the government in developing the case against him, or to plead guilty, nor did he suffer any other prejudice that might render his conviction unfair. The only detriment Williams incurred in reliance on [the] promise was the loss of his employment with the VA." (*Id.* at pp. 803–804.)

In *Cameron*, a state police officer promised the defendant no firearms charge would be filed against him if he cooperated and provided information on the whereabouts of his brother, who was wanted for robbery and rape. (*Cameron, supra*, 2006 WL 3491012 at pp. *1–*2.) No state charges were filed. (*Ibid.*) However, after learning about the defendant's unlawful possession of a firearm, federal prosecutors brought charges against him. (*Id.* at p. *3.) The defendant moved to dismiss or suppress evidence on the basis of the state officer's promise. (*Id.* at pp. *1, *4.) The district court first concluded the state officer's promise was not authorized by, and thus was not binding on, the federal prosecutors. (*Id.* at p. *7.) It then turned to the question of whether the unauthorized promise was enforceable under due process principles. (*Id.* at pp. *8–*9.) The court previously had found no evidence that, as a result of the cooperation agreement, the defendant had incriminated himself or been denied counsel or any other constitutional right. (*Id.* at p. *8.) The government also stated it would not use any statements the defendant gave to the state officers. (*Ibid.*) Accordingly, the federal charges "d[id] not derive from the information provided by defendant under his agreement" with the state officer. (*Ibid.*) On the contrary, the "defendant

already had been apprehended in possession of a firearm before [the state officer] made any promises to him." (*Id.* at p. *9.) "Thus, defendant 'was not induced by the agreement to incriminate himself, to furnish information useful to the government in developing the case against him, or to plead guilty.' " (*Ibid.*, quoting *Williams, supra,* 780 F.2d at p. 803.) Nor did the defendant identify any other "detriment or prejudice that might render a conviction unfair." (*Cameron, supra,* at p. *9.)

Thus, as the federal cases explain, the detrimental reliance required to enforce an unauthorized cooperation agreement must be more than simply providing the requested or specified cooperation. A defendant must harm himself in a constitutional sense, such as by providing incriminating statements or other evidence the prosecution can use against him.

The one California case defendant cites, *People v. Hayes* (1988) 200 Cal.App.3d 400 [246 Cal.Rptr. 750], falls within the limited due process exception explicated by the federal circuit courts. After Hayes was charged with multiple crimes, several law enforcement officers paid him a visit at the county jail and, according to Hayes, offered him a "deal"—if he would "set up" his defense attorney, whom the officers suspected of being involved with narcotics, the officers " 'would drop all pending charges.' " (*Id.* at p. 404.) His attorney subsequently made a motion to be relieved as counsel, which was granted, and Hayes eventually told the officers he would not "get anything useful" on the attorney because he suspected Hayes was an informant. (*Id.* at p. 405.) After several changes of counsel, Hayes moved to dismiss the charges on Sixth Amendment and due process grounds. The trial court denied the motion, reasoning the charged criminal conduct had occurred before any misconduct by the officers. (*Ibid.*)

The Court of Appeal reversed and remanded. It held the officers' direct communications with Hayes, despite the fact he was represented by counsel (a fact the officers knew or should have known), were an egregious infringement of his Sixth Amendment right to counsel, made worse by the fact the communications were directed toward entrapping his attorney. (*People v. Hayes, supra,* 200 Cal.App.3d at pp. 407–409.) "However, absent a defendant's assent and his attempt to comply with" the proffered deal, the court failed "to see what prejudice may have accrued" to him. (*Id.* at p. 412.) The court therefore sent the case back to the trial court with directions to determine whether Hayes "attempted in good faith to carry out the agreement." (*Id.* at p. 413.) If the trial court found Hayes did so, it was then to determine which counts "were the subject matter of the agreement" and determine the appropriate remedy for those counts, stating, "dismissal should be presumed to be the normally reasonable consequence of an agreement such as the one herein." (*Id.* at pp. 413–414.) The People could rebut the

presumption, however, "under a proper evidentiary showing, by establishing objectively that some lesser consideration than dismissal would have been the most favorable bargain which might reasonably have been negotiated under the circumstances" had Hayes's right to counsel not been abridged. (*Id.* at p. 413.)

The prosecution in *Hayes* apparently never raised the threshold issue of the officers' lack of authority to offer the asserted deal, since the Court of Appeal focused only on whether Hayes's Sixth Amendment right to counsel was violated. Nor did the Court of Appeal, in turn, characterize its discussion as considering whether an unauthorized promise to dismiss was nevertheless enforceable on due process grounds. However, the substance of the court's analysis went to exactly that issue—that if Hayes agreed to and relied on the agreement, his constitutional right to counsel was undoubtedly impaired, requiring an appropriate remedy.

The trial court here stated, "Detrimental reliance is not required to uphold an agreement," citing *Johnson v. Mabry* (8th Cir. 1983) 707 F.2d 323. As we have discussed, this is not correct. Detrimental reliance—indeed, detrimental reliance of constitutional consequence—must be shown before an unauthorized promise not to prosecute made in connection with a cooperation agreement will be enforced on due process grounds. *Johnson* is not on point because it involved a plea agreement made and then withdrawn by a federal prosecutor. (*Id.* at pp. 324 & 327–328, fn. 8.) Furthermore, the United States Supreme Court reversed the Eighth Circuit's decision, and in so doing, observed that, unlike the defendant in *Santobello*, Johnson's plea was not induced by the prosecutor's withdrawn plea deal. (*Mabry v. Johnson* (1984) 467 U.S. 504, 509–510 [81 L.Ed.2d 437, 104 S.Ct. 2543], abrogated on other grounds in *Puckett v. United States* (2009) 556 U.S. ___, ___, fn. 1 [173 L.Ed.2d 266, 129 S.Ct. 1423, 1430, fn. 1].) In other words, Johnson had not detrimentally relied on the prosecutor's proffered plea agreement.

The trial court also found defendant "detrimentally relied" on the promise that the criminal proceedings would be dismissed by putting himself "at risk" to obtain information for the officers and fulfilling his part of the cooperation agreement. Not only did defendant testify he was never nervous or scared—in fact, he "felt pretty good," like "he was doing something good"—but this was not detrimental reliance of constitutional dimension implicating due process. Indeed, like the defendant in *Cameron*, defendant here had already been apprehended before the law enforcement officers made any promise to him. It was defendant who suggested he might be able to provide information to the officers, and he admittedly provided substantial information before they ever promised the criminal charges would "go away." In addition, the information defendant provided did not concern himself. Thus, defendant "was not

induced by the agreement to incriminate himself, to furnish information useful to the government in developing the case against him, or to plead guilty." (*Williams, supra,* 780 F.2d at p. 803.) Accordingly, this case does not fall within the "narrow" exception that allows for the enforcement, on due process grounds, of unauthorized promises by law enforcement officers that criminal charges will be dismissed. (See *Flemmi, supra,* 225 F.3d at p. 88, fn. 4.)

## III. Disposition

The order dismissing the felony possession charge and probation violations is reversed.

Marchiano, P. J., and Margulies, J., concurred.