## WHISKEY CASES.

United States v. Ford; United States v. Ford; United States v. One Still; United States v. Fifty Barrels of Distilled Spirits; United States v. Three Hundred and Nineteen Barrels of Whiskey; United States v. Four Hundred Barrels of Distilled Spirits; United States v. Four Hundred Packages of Distilled Spirits; United States v. One Hundred and Fifty Barrels of Whiskey.

1. The district attorney has no authority to contract that a person accused of an offence against the United States shall not be prosecuted or his property subjected to condemnation therefor, if, when examined as a witness against his accomplices, he discloses fully and fairly his and their guilt.

2. A person so accused cannot plead the contract in bar of proceedings against him or his property, nor avail himself of it upon the trial, but has merely an equitable title to executive mercy, of which the court can take notice only when an application to postpone the case is made in order to give him an opportunity to apply to the pardoning power.

Error to the Circuit Court of the United States for the Northern District of Illinois.

The first two of these cases were actions of debt instituted in the Circuit Court to recover the penalties imposed by sects. 3296 and 3452 of the Revised Statutes. The remaining cases were instituted in the District Court by way of information under sects. 3281, 3299, 3453, and 3456. The defence in the first case, and it is substantially the same in all, consists of the general issue and the following special plea: —

" And for a further plea in this behalf said defendants say *actio non*, because they say that heretofore, to wit, on the twenty-seventh day of December, A.D. 1875, at Chicago, at, to wit, said northern district of Illinois, the said plaintiffs and the said defendants entered into an agreement by which it was, among other things, agreed that if the said defendants would testify on behalf of the plaintiffs frankly and truthfully, when required, in reference to a conspiracy among certain government officials in the revenue service and other parties, then known to exist, whereby the honest manufacture of spirits and

payment of the tax had been rendered practically impossible, and should plead guilty to one count in an indictment then pending against them in the District Court, in and for said northern district, and should withdraw their pleas in a certain condemnation case then pending against them in said District Court, the said plaintiffs would recall any and all assessments under the internal-revenue laws then made against said defendants, and that no more assessments under said law should be made against said defendants, and that no proceedings other than said condemnation case should be prosecuted against said defendants, and that no new proceedings should be commenced against said defendants on account of transactions then past; and these defendants aver that they and each of them have fully performed said contract on their part, and defendants further aver that this suit is a proceeding other than said condemnation case, and that this suit is for the recovery upon transactions prior to the entering into said agreement; and this the said defendants are ready to verify."

The United States demurred to the special plea. The demurrer was overruled, and judgment having been rendered for the defendants, and the judgment of the District Court affirmed. the United States brought the cases here.

*The Attorney-General* for the United States.
*Mr. Edward Jussen* and *Mr. Charles H. Reed, contra.*

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Accomplices in guilt, not previously convicted of an infamous crime, when separately tried are competent witnesses for or against each other; and the universal usage is that such a party, if called and examined by the public prosecutor on the trial of his associates in guilt, will not be prosecuted for the same offence, provided it appears that he acted in good faith and that he testified fully and fairly.

Where the case is not within any statute, the general rule is that if an accomplice, when examined as a witness by the public prosecutor, discloses fully and fairly the guilt of himself and his associates, he will not be prosecuted for the offence disclosed; but it is equally clear that he cannot by law plead such facts in bar of any indictment against him, nor avail

himself of it upon his trial, for it is merely an equitable title to the mercy of the executive, subject to the conditions before stated, and can only come before the court by way of application to put off the trial in order to give the prisoner time to apply to the executive for that purpose. *Rex* v. *Rudd*, 1 Cowp. 331.

Sufficient appears to show that the following are the material proceedings in the several cases: 1. That the first two were actions of debt commenced in the Circuit Court to recover the double internal-revenue tax imposed, as fully set forth in the respective declarations. 2. That the other six cases are informations filed in the District Court to forfeit the properties therein described for acts done in violation of the internal-revenue laws.

Service was made in the first two cases, and the defendants appeared and pleaded the general issue and the special plea set forth in the transcript. Issue was joined upon the first plea, and the United States demurred to the special plea. Hearing was had, and the court overruled the demurrer and gave judgment for the defendants. Like defences in the form of answers or pleas were filed in the other six cases commenced in the District Court, to which the United States demurred ; but the District Court overruled the demurrers, and finally rendered judgment in each case for the defendants. Prompt steps were taken by the district attorney to remove the cases into the Circuit Court, where the respective judgments rendered by the District Court were affirmed.

Suffice it to say in this connection, without entering into detail, that the United States sued out a writ of error in each case and removed the same into this court. Both parties agree that the questions presented for decision are      same in each case, in which the court here fully concurs.

Two errors are assigned as causes for reversing the judgment, which present very clearly the matters in controversy as discussed at the bar. 1. That the plea or answer set up as defence is bad because it is too general and does not set forth the supposed agreement in traversable form. When filed, the first assignment of error also objected to the plea or answer that it did not designate the officer who made the alleged agreement,

which was plainly a valid objection to it; but that was obviated at the argument, it being conceded by the United States that the plea or answer should be understood as alleging that the supposed agreement was made by the district attorney. 2. That the plea or answer is bad because the officer representing the government in these prosecutions had no authority to make the agreement pleaded, and that the court cannot enforce it, as it is void.

As amended, it requires no argument to show that the plea or answer cannot be understood as alleging that the President was a party to any such agreement, as the distinct allegation is that it was made by the district attorney; nor could any such implication have arisen even if the pleading had not been amended, as it is settled law that suits of the kind to recover municipal forfeitures must be prosecuted in the subordinate courts by the district attorney, and in this court, when brought here by appeal or writ of error, by the Attorney-General. *Confiscation Cases*, 7 Wall. 454. Suppose the plea to be amended as stipulated at the argument, the first question is, whether as amended it sets up a good defence to the several actions. Taken in that view, it alleges in substance and effect that the district attorney promised the defendants that if they would testify in behalf of the United States frankly and truthfully when required, in reference to a conspiracy among certain government officials in the internal-revenue service, and other parties then known to exist, whereby the honest manufacture of distilled spirits and the collection of the tax thereon had been rendered practically impossible, and would plead guilty to one count in an indictment then pending against them in said District Court, and would withdraw their pleas in certain condemnation cases then pending against their property in said District Court, for the purpose *only* of insuring their good faith in so testifying on behalf of the United States, then the United States would recall any and all assessments under the internal-revenue law made against them, and that no more assessments under said law should be made against them, that no more proceedings against them should be commenced on account of violations of the internal-revenue laws then passed, and that no penalties or forfeitures should in any manner be enforced or recovered

against them or their property, that all suits for penalties and for forfeitures then pending against them and their property should be dismissed, and that full and complete indemnity should be granted to them as the said claimants.

Complete performance on their part is alleged by the claimants, and they allege that the pending suits are for the condemnation and confiscation of their property, which was seized by the United States on the ground of the alleged violation of the internal-revenue law, prior to entering into the said agreement. Assessments made against the claimants or their property are to be recalled, and they and their property are to be free of internal-revenue taxation. Proceedings pending against them for violations of the internal-revenue laws are to be dismissed and no more are to be instituted, and the claimants are promised·full and complete indemnity, civil and criminal, if they will consent to testify.

Considering the scope and comprehensive character of the supposed agreement, it is not strange that the district attorney deemed it proper to demur to the plea. He took two objections to it; but the court will examine the second one first, as if that is sustained, the other will become immaterial.

Waiving for the present the question whether the district attorney may contract with an accomplice of an accused person on trial,.that if he will testify in the case his taxes shall be abated, or that he and his property shall be exempt from internal-revenue taxation, the court will consider in the first place whether the district attorney, as a public prosecutor, may properly enter into an agreement with such an accomplice, that if he will testify fully and fairly in such a prosecution against his associate in guilt he shall not be prosecuted for the same offence; and if so, whether such an agreement, if the witness performs on his part, will avail the witness as a defence to the criminal charge in case of a subsequent prosecution.

Considered in its full scope, the agreement is that in consideration of the defendants testifying against their co-conspirators who were indicted for defrauding the revenue, they, the defendants, should have a full and complete discharge, not only from all criminal liability, but from all penalties and forfeitures they had incurred, and from liability for their internal-revenue taxes

which they had fraudulently refused to pay, giving them full and complete indemnity, civil and criminal, for all their fraudulent and illegal acts in respect to the public revenue.

Courts of justice everywhere agree that the established usage is that an accomplice duly admitted as a witness in a criminal prosecution against his associates in guilt, if he testifies fully and fairly, will not be prosecuted for the same offence, and some of the decided cases and standard text-writers give very satisfactory explanations of the origin and scope of the usage in its ordinary application in actual practice. Beyond doubt, some of the elements of the usage had their origin in the ancient and obsolete practice called *approvement*, which may be briefly explained as follows: When a person indicted of treason or felony was arraigned, he might confess the charge before plea pleaded, and appeal, or accuse another as his accomplice of the same crime, in order to obtain his pardon. Such *approvement* was only allowed in capital offences, and was equivalent to indictment, as the appellee was equally required to answer to the charge; and if proved guilty, the judgment of the law was against him, and the *approver*, so called, was entitled to his pardon *ex debito justitiæ*. On the other hand, if the appellee was acquitted, the judgment was that the *approver* should be condemned. 4 Bla. Com. 330.

Speaking upon that subject, Lord Mansfield said, more than a century ago, that there were three ways in the law and practice of that country in which an accomplice could be entitled to a pardon : *First*, in the case of *approvement*, which, as he stated, then still remained a part of the common law, though he admitted it had grown into disuse by long discontinuance. *Secondly*, by discovering two or more offenders, as required in the two acts of Parliament to which he referred. *Thirdly*, persons embraced in some royal proclamation, as authorized by an act of Parliament, to which he added, that in all these cases the court will bail the prisoner in order to give him an opportunity to apply for a pardon.

*Approvers*, as well as those who disclosed two or more accomplices in guilt and those who came within the promise of a royal proclamation, were entitled to a pardon; and the same high authority states that besides those ancient statutory regulations

there was another practice in respect to accomplices who were admitted as witnesses in criminal prosecutions against their associates, which he explains as follows : Where the accomplice has made a full and fair confession of the whole truth and is admitted as a witness for the crown, the practice is, if he act fairly and openly and discover the whole truth, though he is not entitled *of right* to a pardon, yet the usage, the lenity, and the practice of the court is to stop the prosecution against the accomplice, the understanding being that he has an equitable title to a recommendation for the king's mercy.

.Subsequent remarks of the court in that opinion showed that the ancient statutes referred to were wholly inapplicable to the case, and that there remained even at that date only the equitable practice which gives a title to recommendation to the mercy of the crown.   Explanations then follow which prove that the practice referred to was adopted in substitution for the ancient doctrine of *approvement*, modified and modelled so as to be received with greater favor.   As modified it gives, as the court said in that case, a kind of hope to the accomplice that if he behaves fairly and discloses the whole truth, he may, by a recommendation to mercy, save himself from punishment and secure a pardon, which shows to a demonstration that the protection, if any, to be given to the accomplice rests on the described usage and his own good behavior ; for if he acts in bad faith, or fails to testify fully and fairly, he may still be prosecuted as if he had never been admitted as a witness.   *Rex* v. *Rudd*, 1 Cowp. 331 ; s. c. 1 Leach, 115.

. Great inconvenience arose from the practice of *approvement*, in consequence of which a mode of proceeding was adopted in analogy to that law, by which an accomplice may be entitled to a recommendation to mercy but not to a pardon as of legal right, nor can he plead it in bar or avail himself of it on his trial.   2 Hawk. P. C. n. 3, p. 532 ; 3 Russ. on Crimes (9th Am. ed.), 596.

In the present practice, says Mr. Starkie, where accomplices make a full and fair confession of the whole truth, and are in consequence admitted to give evidence for the crown, if they afterwards give their testimony fairly and openly, although they are not of right entitled to a pardon, the usage, lenity, and

practice of the court is to stay the prosecution against them and they have an equitable title to a recommendation to the king's mercy.   2 Stark. Evid. (4th Am. ed.) 15.

*Participes criminis* in such a case, when called and examined as witnesses for the prosecution, says Roscoe, have an equitable title to a recommendation for the royal mercy; but they cannot plead this in bar to an indictment against them, nor can they avail themselves of it as a defence on their trial, though it may be made the ground of a motion for putting off the trial in order to give the prisoner time to present an application for the executive clemency.   Roscoe, Cr. Evid. (9th Am. ed.) 597.

Authorities of the highest character almost without number support that proposition, nor is it necessary to look beyond the decisions of this court to establish the correctness of the rule. *Ex parte William Wells*, 18 How. 307.

Special reference is made in that case to the three ancient modes of practice which authorized accomplices, when admitted as witnesses in criminal prosecutions, to claim a pardon as a matter of right; and the court having explained the course of such proceedings, remarked that, except in those cases, accomplices, though admitted to testify for the prosecution, have no absolute claim or legal right to executive clemency.

Much consideration appears to have been given to the question in that case, and the court held that the only claim the accomplice has in such a case is an equitable one for pardon, and that only upon the condition that he makes a full and fair disclosure of the guilt of himself and that of his associates, that he cannot plead it in bar of an indictment against him for the offence, nor use it in any way except to support a motion to put off the trial in order to give him time to apply for a pardon.

Three-quarters of a century before that, ten of the twelve judges of England decided in the same way, holding that the accomplice in such a case cannot set up such a claim in bar to an indictment against him, nor avail himself of it upon his trial, that such a claim for mercy depends upon the conditions before described, and that it can only come before the court by way of application to put off the trial in order to give the party

time to apply for a pardon. *Rex* v. *Rudd*, 1 Leach, 125; 1 Chitty, Cr. L. (ed. 1847) 82; Mass. Cr. L. 175.

Attempt was made sixty years later in the same court to convince the judges then presiding that some of the remarks of the Chief Justice in *Rex* v. *Rugg*, before cited, justified the conclusion that the accomplice in such a case was by law entitled to be exempted from punishment; but Lord Denman replied that the organ of the court on that occasion was not speaking of legal rights in the strict sense, nor of such rights as would constitute a defence to an indictment or an answer to the question why sentence should not be pronounced, saying, in substance and effect, that th  right mentioned was only an equitable right, and that the court would postpone the trial or any action in the case to the prejudice of the prisoner, in order to give him an opportunity to apply to the crown for mercy. *Rex* v. *Garside & Mosley*, 2 Ad. & Ell. 275; *Rex* v. *Lee*, Russ. & R. 361; *Rex* v. *Hunton*, id. 454.

Other text-writers of the highest repute, besides those previously mentioned, affirm the rule that accomplices, though admitted as witnesses for the prosecution, are not of right entitled to a pardon, that they have only an equitable right to a recommendation to the executive clemency; and they all hold that prisoners under such circumstances cannot plead such right in bar of an indictment against them, nor avail themselves of it as a defence on their trial.

None of those propositions can be successfully controverted; but it is equally clear that the party, if he testifies fully and fairly, may make it the ground of a motion to put off the trial in order that he may apply to the executive for the protection which immemorial usage concedes that he is entitled to at the hands of the executive.    3 Russ. Crimes (9th Am. ed.), 597.

Certain ancient statutory regulations, as already remarked, gave unconditional promise to accomplices of pardon and complete exemption from punishment, and in such cases it was always held that the accomplice, if he was called and examined for the prosecution, was entitled as of right to a pardon, provided he acted in good faith, and testified fully and fairly to the whole truth.    Instances of the kind are adverted to by Mr. Phillipps in his valuable treatise on Evidence; but he, like the

preceding text-writer, states that accomplices, when admitted as witnesses, under the more modern usage and practice of the courts, have only an equitable title to be recommended to mercy, on a strict and ample performance, to the satisfaction of the presiding judge, of the conditions on which they were admitted to testify, that such an equitable title cannot be pleaded in bar nor in any manner be set up as a defence to an indictment charging them with the same offence, though it may be made the ground of a motion for putting off their trial in order to allow time for an application to the pardoning power. 1 Phil. Evid. (ed. 1868) 86.

Offenders of the kind are not admitted to testify as of course, and sufficient authority exists for saying that in the practice of the English court it is usual that a motion to the court is made for the purpose, and that the court, in view of all the circumstances, will admit or disallow the evidence as will best promote the ends of public justice. Id. 87; 3 Russ. Crimes (9th Am. ed.), 598.

Good reasons exist to suppose that the same course is pursued in the courts of some of the States, where the English practice seems to have been adopted without much modification. *People v. Whipple*, 9 Cow. (N. Y.) 707.

Such offenders everywhere are competent witnesses if they see fit voluntarily to appear and testify; but the course of proceeding in the courts of many of the States is quite different from that just described, the rule being that the court will not advise the Attorney-General how he shall conduct a criminal prosecution. Consequently it is regarded as the province of the public prosecutor and not of the court to determine whether or not an accomplice, who is willing to criminate himself and his associates in guilt, shall be called and examined for the State.

Of all others, the prosecutor is best qualified to determine that question, as he alone is supposed to know what other evidence can be adduced to prove the criminal charge. Applications of the kind are not always to be granted, and in order to acquire the information necessary to determine the question, the public prosecutor will grant the accomplice an interview, with the understanding that any communications he may make

to the prosecutor will be strictly confidential. Interviews for the purpose mentioned are for mutual explanation, and do not absolutely commit either party; but if the accomplice is subsequently called and examined, he is equally entitled to a recommendation for executive clemency. Promise of pardon is never given in such an interview, nor any inducement held out beyond what the before-mentioned usage and practice of the courts allow.

Prosecutors in such a case should explain to the accomplice that he is not obliged to criminate himself, and inform him just what he may reasonably expect in case he acts in good faith, and testifies fully and fairly as to his own acts in the case, and those of his associates. When he fulfils those conditions he is equitably entitled to a pardon, and the prosecutor, and the court if need be, when fully informed of the facts, will join in such a recommendation.

Modifications of the practice doubtless exist in jurisdictions where the power of pardon does not exist prior to conviction; but every embarrassment of that sort may be removed by the prosecutor, as in the absence of any legislative prohibition he may *nol. pros.* the indictment if pending, or advise the prisoner to plead guilty, he, the prisoner, reserving the right to retract his plea and plead over to the merits if his application for pardon shall be unsuccessful. 1 Bish. Cr. Proc. (2d ed.), sect. 1076, and n.

Where the power of pardon exists before conviction as well as after, no such difficulties can arise, as the prisoner, if an attempt is made to put him to trial in spite of his equitable right to pardon, may move that the trial be postponed, and may support his motion by his own affidavit, when the court may properly insist to be informed of all the circumstances. Power under such circumstances is vested in the court in a proper case to put off the trial as long as may be necessary, in order that the case of the prisoner may be presented to the executive for decision.

Centuries have elapsed since the judicial usage referred to was substituted for the ancient practice of *approvement*, and experience shows that throughout that whole period it has proved, both here and in the country where it had its origin,

to be a proper and satisfactory protection to the accomplice in all cases where he acts in good faith, and testifies fairly and fully to the whole truth.    Cases undoubtedly have arisen where the accomplice, having refused to comply with the conditions annexed to his equitable right, has been subsequently tried and convicted, it being first determined that he has forfeited his equitable title to protection by his bad faith and false representations.    *Commonwealth* v. *Knapp*, 10 Pick. (Mass.) 477. Such offenders, if they make a full disclosure of all matters within their knowledge in favor of the prosecution, will not be subjected to punishment; but if they refuse to testify, or testify falsely, they are to be tried, and may be convicted upon their own confession.

Nothing of weight by the way of judicial authority can be invoked in opposition to the views here expressed, as is evident from the brief filed by the defendants, which exhibits proof of research and diligence.    Decided cases may be cited which contain unguarded expressions, of which the following are striking examples: *People* v. *Whipple, supra; United States* v. *Lee,* 4 McLean, 103.

Neither of those cases, however, support the proposition for which they are cited.    Enough appears in the first case to show that it was objected on behalf of the accomplice that the usage gave him no certain assurance of a pardon, inasmuch as the power of pardon was vested in the governor, and the authority of the court extended no further than the recommendation for mercy; to which the court responded, that the legal presumption was that the public faith will be preserved inviolate, and that the equitable claim of the party will be ratified and allowed.

Public policy and the great ends of justice, it was said in the second case, require that the arrangement between the public prosecutor and the accomplice should be carried out; and the court proceeded to remark, that if the district attorney failed to enter a *nolle prosequi* to the indictment, "the court will continue the cause until an application can be made for a pardon," which of itself is a complete recognition of the usage and practice established in the place of the ancient proceeding of *approvement.*    More evil than good flowed from that regu-

lation, and in consequence the practice now acknowledged was substituted in its place, under which the accomplice acquires only an equitable right to the clemency of the executive, which, as Lord Mansfield said, rests on usage and the good behavior of the accomplice, who in a proper case will be bailed by the court in order that he may apply for the pardon to which he is equitably entitled.

Should it be objected that the application may not be successful, the answer of the court must be in substance that given by Lord Denman on a similar occasion, that we are not to presume that the equitable title to mercy which the humblest and most criminal accomplice may thus acquire by testifying to the truth in a Federal court will not be sacredly accorded to him by the President, in whom the pardoning power is vested by the Federal Constitution.

Having come to the conclusion that the district attorney had no authority to make the agreement alleged in the plea in bar, it follows that the Circuit Court erred in the two cases instituted there, in overruling the demurrer to it, and that the judgment must be reversed, and the causes remanded for further proceedings in conformity with the opinion of the court.

Tested by these considerations, it is clear that the Circuit Court also erred in affirming the judgment of the District Court in all the other cases, and that the judgment in each of those cases must be reversed, and the causes remanded with directions to reverse the judgment of the District Court, and for further proceedings in conformity with the opinion of the court; and it is

*So ordered.*