**Richard Custer HYLER, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 23962.**

United States Court of Appeals
Fifth Circuit.

Oct. 2, 1968.

Certiorari Denied March 10, 1969.
See 89 S.Ct. 1018.

A. L. Waldo Stockton, Jacksonville, Fla., for appellant.

Thomas M. Baumer, Samuel S. Forman, Asst. U. S. Attys., Jacksonville, Fla., for appellee.

Before TUTTLE and WISDOM, Circuit Judges, and HEEBE, District Judge.

HEEBE, District Judge:

In this appeal from a conviction for four violations of 18 U.S.C. § 495,[1] appellant raises five questions of procedural and substantive law. We find each of the questions without merit to the appellant and affirm the conviction.

Hyler was arrested[2] on May 11, 1966, by the Deputy Sheriff of Volusia County, Florida, on suspicion of theft and forgery of a government check. He was immediately subjected to identification and to interrogation by state and federal agents. Two days later, on May 13, the appellant was charged with three violations of § 495 and, in the absence of the United States Commissioner who was on vacation, he was taken before a local magistrate in Daytona Beach who set bond at $5,000.00 and bound him over to the United States District Court in Jacksonville, Florida. On June 10, 1966, appellant was arraigned on an indictment which charged him with uttering and publishing as true, three forged government checks payable to one Ethel Konietzky.[3] Counsel was formally appointed

---

1. 18 U.S.C. § 495 provides in pertinent part:

 "Whoever falsely makes, alters, forges, or counterfeits any deed, power of attorney, order, certificate, receipt, contract, or other writing, for the purpose of obtaining or receiving, or of enabling any other person, either directly or indirectly, to obtain or receive from the United States or any officers or agents thereof, any sum of money; or

 "Whoever utters or publishes as true any such false, forged, altered, or counterfeited writing, with intent to defraud the United States, knowing the same to be false, altered, forged, or counterfeited; * * *

 "Shall be fined not more than $1,000 or imprisoned not more than ten years, or both."

2. The arrest was ostensibly for "vagrancy" and was effected without a warrant; there is no doubt that suspicion of § 495

violations was the real reason for the detention. However, whether or not the arrest was proper within the context of Williams v. United States, 382 F.2d 48 (5th Cir. 1967), and Swinney v. United States, 391 F.2d 190 (5th Cir. 1968), is immaterial here, for no prejudice to appellant's case is alleged to have resulted from it.

3. The record does not disclose whether appellant was represented by counsel at this time, nor in fact does the record reveal the fact that the proceeding was held; the government's brief makes mention of it only in passing, and it was thereby called to the Court's attention. We do not consider the circumstances surrounding this arraignment because the proceeding was not alluded to by the appellant, and, because the indictment under which this first arraignment was had was subsequently replaced by a bill of information under which the appellant

by the court on August 5, at a hearing which also incorporated a waiver by the defendant of his right to indictment, the filing of a superseding bill of information by the United States Attorney, and the defendant's arraignment on the information. Court-appointed counsel, prior to the formal appointment, on July 28, filed several motions on Hyler's behalf which were variously disposed of by court order dated August 3. The information filed at the August 5 hearing contained the three counts of the superseded indictment as well as two additional counts charging appellant with possession of, and uttering and publishing as true, a fourth forged government check, payable to Bernice M. Crowell. Hyler was informed by his counsel in open court that he could obtain a continuance of his trial on the new charges in order to allow time for additional preparation, but the appellant waived any further delay. The trial was held on the 11th and 12th of August, and resulted in a verdict of Guilty on two of the counts with respect to the Konietzky checks and the two counts relative to the Crowell check; Hyler was acquitted on Count 3 of the information.

■ We dispose briefly of appellant's contention that, with respect to those counts charging forging, uttering and publishing, "intent to defraud the United States" was not proved. The contention rests on the premise that the appellant, if he did knowingly utter and publish a forged government check, although he might be charged with intent to defraud the recipient, cannot be charged necessarily with an intent to defraud the maker of the check, the government. This argument is precluded by this Court's decision in Walker v. United States, 342 F.2d 22 (5th Cir. 1965). Appellant's contention that the government would simply not have paid out money on any check known by Treasury officials to be forged, and that the government in fact did not suffer any pecuniary loss with

respect to the checks in question, is obviously without merit; the appellant, assuming he did utter and publish United States checks known by him to be forged, was charged with the knowledge that the government very well *might* have paid out money without knowledge of the forgery. The appellant's intention, presumed from the clearly possible effects of his acts, is a necessary element of the offense, not the effects which in this or any particular case might actually have flowed from those acts.

Appellant next alleges four procedural defects in the process leading to his conviction: (1) that the government failed to provide him with the assistance of counsel in the early stages of the proceedings; (2) that he was denied the right to bail between the time of his arrest on May 11 and the first judicial hearing in the matter on May 16; (3) that the two counts relative to the Crowell check were added to the charges against him only shortly before his trial; and (4) that the trial judge, although he issued the rule segregating the witnesses at trial, failed to caution the witnesses to refrain from discussing the case among themselves outside the courtroom.

■ Delays and defects in the judicial process leading to possible conviction of crime, even though they might result in a denial of important rights of accused persons, do not automatically necessitate the reversal of an ultimate conviction. Merely because his personal rights may have been denied in the context of criminal proceedings, the accused is not automatically excused from the penalties imposed by the law for his wrongdoing. Constructive remedies are available for the redress of abuses occurring in or out of the context of criminal proceedings which do not go to the propriety of the outcome of such proceedings, but these do not include the reversal of determinations of guilt, made fairly and impartially and with all due process, unconnected

---

was again arraigned, the first arraignment technically forms no part of the proceedings in this case. In any event, the appellant has indicated no basis for

the belief that this arraignment was in any way prejudicial to the outcome of his trial on the superseding information.

with and unaffected by the abuses complained of. Generally, only a defect in, or impropriety of, the ultimate determination of the guilt of the accused warrants a reversal of that determination, and ordinarily it is only when deprivations of rights of an accused have a definite bearing on the propriety of an ultimate determination of guilt that such deprivations warrant interference with the determination.[4]

 Appellant's case with respect to the procedural issues noted rests on a position contrary to these very basic principles. We therefore do not reach the question of whether or not appellant was wrongfully detained without benefit of bail between May 11 and May 16, for there is nothing in the record to indicate that the detention prejudiced the ultimate determination that he uttered and published forged government checks with the intent to defraud the United States. See United States v. Oliver, 363 F.2d 15 (7th Cir. 1966), cert. den. 385 U.S. 904, 87 S.Ct. 216, 17 L.Ed.2d 135. The specification of error with respect to the trial court's handling of the witnesses at trial is likewise without merit, appellant having indicated no basis for inferring any impropriety here. See United States v. Chiarella, 184 F.2d 903 (2d Cir. 1950); Anderson v. United States, 391 F.2d 243 (5th Cir. 1968). Appellant's complaint that the two counts respecting the Crowell check were added to the other charges shortly before trial is similarly inapposite in view of the appellant's express waiver of the right to delay the trial for further preparation; the appellant un-equivocally agreed to the addition of the new counts for the reason that he was already prepared to meet the charges and wished to have all the charges against him concluded at an early date.

 Equally inappropriate is Hyler's attempt to obtain a reversal on the grounds of absence of counsel during his interrogation and at the May 16 hearing before the magistrate. Certainly Hyler was entitled to court-appointed counsel at the times pertinent, Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and we must presume in the absence of contrary proof from the government that he did not waive his right, Miranda v. State of Arizona, 384 U.S. 436, 475, 86 S.Ct. 1602. But any prejudice which might have resulted from lack of counsel at the interrogations was sufficiently nullified by the trial court's exclusion of all statements made by the appellant at these times. Nor was the lack of counsel at the May 16 hearing shown, or even alleged by the appellant, to have had any prejudicial effect on the outcome of his trial. Under Hamilton v. State of Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed. 2d 114 (1961), and White v. State of Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963), the *likelihood* of prejudice which is inherent in lack of counsel at any "critical stage" of a criminal proceeding requires reversal of an ultimate conviction without a showing of actual prejudice, but the appellant has failed to show that the May 16 hearing[5] was "critical" or posed any possibility of prejudice to his case, immediate or re-

---

4. The *conspicuous exception* to this general rule of logic is the rule of *practice* formulated by the Supreme Court in Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), and Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L. Ed.2d 1081 (1961), which now requires, as the only effective means of discouraging unconstitutional searches and seizures, the reversal of convictions, the correctness of which is in no way suspect, based on violations of the rights of an accused under the Fourth Amendment. *White*

and *Hamilton*, discussed infra, cannot be equated with *Mapp* and *Weeks*, for the former cases are grounded on the logical presumption (approaching the irrebuttable because of the difficulty of pinpointing manifestations of actual prejudice) that lack of counsel at a *critical stage* of a criminal prosecution will necessarily affect the correctness of the ultimate determination of guilt.

5. This statement applies also to the June 10 arraignment, see n. 3, supra.

562

mote, which might be the basis for the presumption of prejudice drawn by those decisions.

The Judgment of the District Court is affirmed.