**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Russell WEISS, Defendant-Appellant.**

No. 78–5491.

United States Court of Appeals, Fifth Circuit.

July 30, 1979.

Rehearing and Rehearing En Banc Denied Sept. 19, 1979.

732

Herbert Shafer, Atlanta, Ga., Robert Lee Cook, Sr., Summerville, Ga., for defendant-appellant.

James M. Deichert, Sp. Atty., U.S. Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before TUTTLE, GODBOLD and RUBIN, Circuit Judges.

TUTTLE, Circuit Judge:

Russell Weiss, the manager of a nightclub in Atlanta, Georgia, was considered a "small fish in an ocean of whales" in the alleged involvement of organized crime with the Atlanta nightclub industry. This case concerns efforts by the Atlanta offices of the Justice Department's Organized Crime Strike Force (Strike Force) and the Federal Bureau of Investigation to catch Weiss and in turn use him as bait for the whales. Weiss protests that the government's tactics in hooking him and reeling him in warrant reversal of his convictions for unlawfully receiving a firearm as a convicted felon,[1] bribing a police officer to influence his testimony before a federal grand jury,[2] and obstructing justice by soliciting false testimony before a federal grand jury.[3]

Specifically, Weiss presents three contentions: that the government breached a promise not to prosecute him for these offenses in return for his cooperation in the government's investigation of the Atlanta nightclub industry; that Strike Force attorneys and FBI agents violated his right to counsel during questioning about the nightclub industry by deterring him from having counsel present; and that the government's conduct throughout its dealings with him was so flagrant as to violate due process. We affirm his convictions.

I.

The evidence underlying the charges in this case is not in dispute. To the extent that the parties do differ, we view the evidence in the light most favorable to the government.[4]

On May 17, 1977, a shooting incident occurred at the "Club Stripper" where appellant Weiss was employed as manager. An Atlanta police officer, John Woodward, pursued and arrested the shooting suspects and seized from them a Colt .45 handgun. When Woodward took the suspects and the handgun back to the nightclub for identification, Weiss identified the gun as his. He repeated this identification at the assailants' preliminary hearing and state grand jury inquest.

1. See 18 U.S.C. §§ 922(h)(1) & 924(a).

2. See 18 U.S.C. § 201(d).

3. See 18 U.S.C. § 1503.

4. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

Subsequent investigation by the Atlanta police revealed that the weapon had been stolen in Georgia in 1976. Two months later, on July 27, Woodward sought a warrant for Weiss' arrest, charging him with receipt of stolen property in violation of Georgia law.[5]

During the initial investigation, Woodward also contacted FBI Special Agent William Whitley about the possibility that Weiss, previously convicted in Minnesota of theft by check, a felony in that state,[6] had violated federal firearms law.[7]

On September 8, while receipt of stolen property charges against Weiss were still pending in state court, but with the likelihood of prosecution uncertain, Weiss approached Woodward at another nightclub late one night and told him "it would be worth $500 for me not to be indicted." During this conversation, Weiss mentioned that he had previously bribed another Atlanta policeman.

The following morning, Woodward reported this conversation to his superior. He also reported it to Agent Whitley of the FBI. At a meeting with FBI agents, Woodward agreed to cooperate with them in an investigation and executed a form consenting to wear a "body bug." Later that day he was served with a subpoena to testify before a federal grand jury about Weiss' possession of the handgun and his mention of police bribes, and he was outfitted with the recording equipment. Wearing the body transmitter and accompanied at a distance by FBI agents conducting surveillance, Woodward went looking for Weiss. In the early morning of the following day, he located him, and Weiss gave Woodward $500 to sabotage the state case.

Three nights later, again wearing the body transmitter and under surveillance, Woodward sought out Weiss and showed him the subpoena he had received to testify before the federal grand jury. In response,

Weiss offered Woodward $750 if Woodward would prevent him from being prosecuted on federal firearms violations. Two days later, Woodward sought out Weiss once more. The latter told him he did not have the money and to come back later. Woodward was unable to find Weiss later in the evening. Finally, four nights later, the two met and, in a dark parking lot, Weiss handed Woodward $750. This transaction, as well as the previous payment of $500 and several intervening conversations were all recorded on tapes which were introduced at trial. The FBI also took surveillance photographs which included photos of the meeting in the parking lot.

Once Weiss was caught in this web of evidence, the FBI and the Strike Force proceeded to make use of their catch. What followed was the basis of motions by Weiss to dismiss the indictments against him. The motions were the subject of two hearings before a magistrate and a de novo evidentiary hearing before the trial judge. The district court found that, after their investigation of Weiss, FBI agents Whitley and Fred Ruhlman met with Strike Force attorneys James Deichert and William L. McCulley and agreed on a plan to obtain Weiss' cooperation in the Strike Force investigation of Atlanta nightclubs. Nine days before an indictment of the firearms charge was handed down by the federal grand jury, Whitley and Ruhlman called on Weiss at his home. Whitley told Weiss "I'm going to play a hand of poker with you, but in this instance I'm going to lay my cards on the table." Then he laid out a series of FBI surveillance photographs taken of Weiss and offered to play cassette tapes of Weiss' meetings with Woodward. Whitley cautioned Weiss that they were not there to question him on anything concerning his dealings with Woodward and did not want him to volunteer any statements. The agents explained that they had been

---

5. *See* Ga.Code Ann. § 26–1806.

6. *See* Minn.Stat.Ann. § 609.52 2(3)(a) & 3(2)(5) (1965).

7. 18 U.S.C. § 922(h)(1) makes it unlawful for a person convicted of a crime punishable by one year in prison to possess a weapon transported in interstate commerce. 18 U.S.C. § 924(a) prescribes the penalty for violation of § 922.

investigating the nightclub industry and thought Weiss could be very helpful in this investigation, could "blow the lid off this town." They were instructed to ask his cooperation in this investigation; specifically, they invited him to meet with the Strike Force. The court found Whitley and Ruhlman told Weiss that, although only Strike Force attorneys had authority to promise him anything and they themselves had none, if he did cooperate he might even "walk away scot free."

If he wished to cooperate, Whitley and Ruhlman told Weiss, he should contact them before 4:00 p.m. the next day. In the meantime, he could consult with an attorney if he wished. The agents said they knew he had used an attorney, Ernest Brookins, in his state proceedings; the court found they advised him that although he could consult with Brookins, it might not be in his best interest to do so.[8]

Weiss accepted their offer the next day, and the day following that he was escorted to the Strike Force office. There he met with Strike Force attorney Deichert. The district court found it undisputed that Deichert told Weiss at the outset that the Strike Force had enough evidence to indict him on the charges at issue here and fully intended to go forward with the case. Weiss testified that, at some later point in the discussion, Deichert told him he might go "scot free." Shortly afterward, while Deichert and other attorneys were out of the room, FBI Agent Ruhlman told Weiss that if he cooperated "100 percent," Ruhlman would speak with Strike Force attorney McCulley about the "possibility" of no indictment.

During their discussion, Deichert reiterated the agents' statement that the government sought no further information on charges against Weiss and did not want any statements from him. Instead, Deichert sought Weiss' cooperation in the investigation of the Atlanta nightclub industry and Atlanta Police Department. The district court found that Deichert told Weiss any cooperation he gave would bear on the charges against him at the time of sentencing; the prosecution would tell the sentencing judge of his cooperation, its extent, and its value.

Deichert also told Weiss he could have an attorney present, including Ernest Brookins if he so chose. However, Deichert told Weiss he believed it would be in Weiss' "best interests" to be represented by someone other than Brookins. Asked if he wanted counsel present, Weiss said no.

Deichert then proceeded to question Weiss about the Atlanta nightclub industry. At the end of the questioning, Deichert told Weiss he was not satisfied that Weiss was being completely truthful, and offered the opportunity to respond to further questioning. Two days later, Weiss met with Strike Force attorneys a second time. Again, Deichert was not satisfied, and Weiss' role as an informant ended.

Based on these findings, the district court ruled that there was no actual plea bargain or immunity agreement between Weiss and the Strike Force, nor did Weiss justifiably rely on any apparent agreement. In addition, the court ruled, Weiss had not been denied the presence of counsel, and any interference with his attorney-client relationship with Ernest Brookins had not prejudiced him.

## II.

Several questions arise in considering Weiss' contention that the government promised him he would not be prosecuted on the firearms, bribery, and obstruction of justice charges in return for his cooperation in the Strike Force investigation. First, we are presented with the question whether such a promise would require dismissal of the indictment against Weiss or reversal of his convictions. Second, we must review the district court's determination that no promise was made to Weiss. Branching off from this second question is the question of

---

**8.** Agent Whitley testified that what he said to Weiss was: "as far as discussing it with Mr. Brookins, it might be in his best benefit if he hold off until he talked or discussed the situation with the Strike Force Attorneys."

the appropriate inquiry for determining whether an agreement not to prosecute in return for cooperation exists.

■ We note at the outset that there is some doubt whether a promise not to prosecute on certain charges in return for cooperation in obtaining evidence against others on unrelated offenses is a defense to prosecution of the one cooperating. *See The Whiskey Cases*, 99 U.S. 594, 598–606, 25 L.Ed. 399 (1878). Of course, such cooperation may be the basis of formal grant of statutory immunity at the initiative of the prosecutor. 18 U.S.C. §§ 2514, 6001, 6002. In this case, however, there is no evidence or contention that there was a formal grant of immunity to Weiss in return for evidence concerning the Atlanta nightclub industry.[9] Nor did Weiss give any self-incriminating testimony in the course of discussions with the Strike Force which was relevant to and introduced in this case.

The only court to confront this issue directly, the Ninth Circuit in *United States v. Hunter*, 405 F.2d 1187, 1189 (9th Cir. 1969), held that in the absence of a formal grant of immunity or a waiver of constitutional rights, such a promise is not a defense.[10] In *United States v. Calimano*, 576 F.2d 637 (5th Cir. 1978), this court dealt with the issue obliquely. The court considered whether an agreement not to prosecute was made, apparently assuming that if one had been made it must be enforced. The court nevertheless cast doubt on this assumption by noting that, regardless of the existence of an agreement, the defendant had sustained no prejudice from discussions in which he gave evidence against others, because he had made no plea and no self-incriminating statements or any statements concerning the charges of which he was convicted.

■ We do not have occasion to decide whether or on what basis a prosecutor's promise not to prosecute Weiss in return for his cooperation in obtaining evidence concerning corruption in the Atlanta nightclub industry would require reversal of his convictions. The district court found that no such promise was made. We affirm that finding, obviating the need to consider what effect such a promise should have.

*United States v. Calimano, supra,* is closely on point and frames our inquiry. The defendant was convicted of perjury before a grand jury.[11] He asserted as a defense that the United States Attorney's office

---

**9.** The failure to follow the statutory procedures may not necessarily make any agreement which the Strike Force offered Weiss unlawful. *See United States v. Librach*, 536 F.2d 1228, 1229 (8th Cir.) *cert. denied,* 429 U.S. 939, 97 S.Ct. 354, 50 L.Ed.2d 308 (1976). The prosecutor retains the discretion to decide whether to prosecute. *United States v. Nixon*, 418 U.S. 683, 694–96, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); *United States v. Cowan*, 524 F.2d 504, 507–08 (5th Cir. 1975), *cert. denied,* 425 U.S. 571, 96 S.Ct. 2168, 48 L.Ed.2d 795 (1976). This exercise of discretion is reviewable for its clear abuse, *see Oyler v. Bowles*, 368 U.S. 448, 456, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962), and conceivably a decision to prosecute in the face of a promise not to and a defendant's resultant cooperation might be such an abuse.

Alternatively, the defendant's cooperation might be a basis for equitable immunity. *Cf. United States v. Donahey*, 529 F.2d 831, 832 (5th Cir.) (defendant who testified voluntarily and violated plea bargain not entitled to equitable immunity), *cert. denied,* 429 U.S. 828, 97 S.Ct. 85, 50 L.Ed.2d 91 (1976). It is not clear what is meant by "equitable immunity." The phrase is used in three cases, *United States v.*

*Beasley,* 550 F.2d 261, 268 (5th Cir.), *cert. denied,* 434 U.S. 938, 98 S.Ct. 427, 54 L.Ed.2d 297 (1977); *Donahey, supra,* 529 F.2d at 832; and *United States v. Mitchell*, 384 F.Supp. 562, 563 (D.D.C.1974), but without explanation. The granting of immunity is generally considered an executive or legislative power, not a judicial function. E. g., *United States v. Wilcox*, 450 F.2d 1131, 1138 n.9 (5th Cir. 1971), *cert. denied,* 405 U.S. 917, 92 S.Ct. 944, 30 L.Ed.2d 787 (1972). For a possible explanation of the judicial role in protecting an equitable claim for immunity, see *The Whiskey Cases*, 99 U.S. 594, 25 L.Ed. 399 (1878).

Further, the government's conduct toward the defendant may be so egregious as to offend due process. *See Trotter v. United States*, 359 F.2d 419, 420 (2d Cir. 1966) (flagrant trickery); *United States ex rel. Wissenfeld v. Wilkins*, 281 F.2d 707, 712 (2d Cir. 1960) (promises in bad faith).

**10.** *But see United States v. Goodrich*, 493 F.2d 390, 392–93 (9th Cir. 1974) (considering whether such a promise was made).

**11.** *See* 18 U.S.C. § 1621.

made a promise "to dismiss the indictment against Calimano if Calimano would provide information about illegal activities in the home health care industry." 576 F.2d at 639. There had been discussions of such an agreement between Calimano's counsel and the United States Attorney's office. His counsel had asserted that these discussions had resulted in an agreement, the United States Attorney's office that they had not and that any leniency was conditioned on the extent of Calimano's cooperation. The district court ruled that there was no agreement because there had been no meeting of the minds and the defendant failed to show "a firm promise or commitment to dismiss the indictment." *Id.* at 640. Thus, the court looked only to the existence of an actual agreement. On appeal, this court treated the district court's finding as one of fact and declined to hold it clearly erroneous. *Id.*

We reach the same conclusion on the similar facts in this case. We do not find that the court's finding of no actual promise not to prosecute appellate Weiss on the firearms, bribery, and obstruction charges is clearly erroneous. There was evidence, and the district court found, that agents Whitley and Ruhlman each told him that there was a "possibility" he might not be indicted or might "walk out scot free." Whitley did so when they first approached Weiss at home to invite him to cooperate with the Strike Force; Ruhlman did so after Weiss had already begun to cooperate. However, the court also found, and the appellant does not contest, that Whitley and Ruhlman advised Weiss that only Strike Force attorneys could make any deals with him. It is further uncontested that one of these attorneys, Deichert, told Weiss in no uncertain terms at the outset of his interview with the Strike Force that he would be indicted and prosecuted on all the charges. Although he does not contest that he received

these warnings, Weiss testified that at some point Deichert told him if he cooperated, he would go free. The district court, however, was in a better position than we are to weigh the credibility of this testimony in the face of the other evidence that the government made no firm promise or commitment to Weiss. *See United States for the Use and Benefit of Micro-King Co. v. Community Science Technology, Inc.,* 574 F.2d 1292, 1295–96 (5th Cir. 1978). We conclude that the district court's finding of fact that there was no agreement is amply supported in the record.

Weiss contends that the proper inquiry in this case is not whether there was in fact a firm promise or commitment not to prosecute him but whether, when he cooperated with the Strike Force, he had a reasonable subjective expectation that he would not be prosecuted. The argument is drawn from our decision in *United States v. Robertson,* 582 F.2d 1356 (5th Cir. 1978) (en banc), in which we considered the proper standard for determining whether statements made by a defendant were made "in connection with" plea negotiations, *cf.* Fed.R.Crim.P. 11(e)(6) (statements made "in connection with, and relevant to" plea negotiations not admissible in evidence); Fed.R.Evid. 410 (same). The court established a two-step analysis which focuses on the defendant's subjective expectation that plea negotiations were taking place when he made the statements sought to be admitted against him.[12]

This analysis is out of context in this case. *Robertson* treated the question whether an agreement for some form of prosecutorial leniency exists in its most common context: where a plea bargain, confession or admission is alleged to have been made in response to such an agreement. *See, e. g., Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1972); *United States v. Geders,* 585

---

12. [F]irst, whether the accused exhibited an actual subjective expectation to negotiate a plea at the time of the discussion, and, second, whether the accused's expectation was reasonable given the totality of the objective circumstances.

582 F.2d at 1366. *Accord, United States v. Geders,* 585 F.2d 1303, 1305 (5th Cir. 1978) (en banc), *cert. denied,* —— U.S. ——, 99 S.Ct. 2031, 60 L.Ed.2d 396 (1979).

F.2d 1303 (5th Cir. 1978) (en banc); *United States v. Herman,* 544 F.2d 791 (5th Cir. 1977). In that context, the guiding concern is the protection of the defendant's fifth amendment privilege against the compulsion of self-incriminating testimony. Thus, a confession founded on a violated plea bargain or promise of immunity is not considered voluntary. *Shotwell Manufacturing Co. v. United States,* 371 U.S. 341, 83 S.Ct. 448, 9 L.Ed.2d 357 (1963) (immunity agreement); *see Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) (plea bargain must be voluntary and intelligent).[13] Conversely, the basic purpose of a grant of immunity is to permit the compulsion of testimony which otherwise would be privileged by the fifth amendment. *See* 18 U.S.C. §§ 2514, 6001; *United States v. Tramunti,* 500 F.2d 1334 (2d Cir.), *cert. denied,* 419 U.S. 1079, 95 S.Ct. 667, 42 L.Ed.2d 673 (1974).

■ To protect the voluntariness of a waiver of fifth amendment rights, where a plea, confession, or admission is based on a promise of a plea bargain or immunity, the government must keep its promise. *Santobello v. New York, supra,* 404 U.S. at 262, 92 S.Ct. 495; *Shotwell Manufacturing, supra,* 371 U.S. at 347, 83 S.Ct. 448. Alternatively, a defendant whose plea bargain is breached is entitled to the opportunity to withdraw his plea, *Santobello, supra,* 404 U.S. at 263, 92 S.Ct. 495, and the defendant who gives testimony under a promise of immunity is entitled to the exclusion of any use of that testimony against him, *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972).[14] Fed.R.Crim.P.

11(e)(6) and Fed.R.Evid. 410 make the same rule applicable to evidence of statements made "in connection with and relevant" to plea bargaining negotiations.

Our decision in *Robertson* dealt with the admissibility of statements which a defendant made at the time of his arrest in an effort to secure the release of his wife and his codefendant's girlfriend. Consequently, it considered the existence of a plea bargain agreement in the general context of concern for protection of the right against self-incriminating admissions and the specific context of admissibility under Fed.R. Crim.P. 11(e)(6) and Fed.R.Evid. 410.

■ In this case, neither context is presented. Questioning of Weiss following his agreement to cooperate did not address the charges for which he was convicted, and no statements he made to the Strike Force were introduced at his trial. Weiss did not agree to plead guilty on any charges, or even discuss doing so, in exchange for prosecutorial leniency on other charges. Accordingly, this case does not involve a "plea bargain" as such.[15] Nor does it prevent the admissibility of statements "in connection with" plea negotiations under Fed.R. Crim.P. 11(e)(6) or Fed.R.Evid. 410, since there is no "plea bargain" and no evidence against Weiss in this case obtained as a result of his cooperation. For the latter reason, the case also does not present us with the use of testimony given despite the privilege against self-incrimination. As a result, the fundamental policies of *Robertson* and its kindred are not affected: Weiss' fifth amendment privilege is untouched by his prosecution and convictions in this case.

---

13. A guilty plea is a confession. *Robertson v. United States,* 582 F.2d 1356, 1368 (5th Cir. 1978) (en banc).

14. Immunity is generally divided into two categories: "use" immunity, immunity from any use of testimony against the witness testifying under immunity, and "transactional" immunity, immunity from prosecution for any matters about which the immune witness testifies. *See Piccirillo v. New York,* 400 U.S. 548, 554–55, 91 S.Ct. 520, 27 L.Ed.2d 596 (1971) (Brennan, J., dissenting from dismissal of certiorari).

Exclusion of immune testimony does not provide complete enforcement of transactional im-

munity, which the promise claimed by Weiss resembles. But exclusion of immune testimony and its fruits is all that is required by the fifth amendment. *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972).

15. In *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1972), the Court referred to the practice sometimes loosely called "plea bargaining" as "[t]he *disposition* of criminal cases by agreement between the prosecutor and the accused . . .." *Id.* at 260, 92 S.Ct. at 498 (emphasis added).

Notwithstanding his cooperation with the Strike Force there is no prejudice to Weiss *in this case* as a result of any reliance on an agreement.[16] The only prejudice which could result from breach of an agreement is simply that Weiss was prosecuted. In this light, the appropriate analysis is not whether Weiss subjectively expected not to be prosecuted but whether there was a promise held out to which the government, as a matter of fair conduct, might be bound.[17]

█ Although the government may have used the hope of no prosecution on the firearms, bribery, and obstruction charges as bait to draw Weiss to the Strike Force office in the first place, the agents' warning to Weiss coupled with Attorney Deichert's explicit statement to Weiss that he would be prosecuted indicate that, once he was there, the government did not continue holding out this hope to secure his cooperation.

### III.

█ Weiss contends that his discussions with the Strike Force took place in violation of his sixth amendment right to counsel because he had no counsel present. His contention is based on the principle established in *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), that an individual has a right to have counsel present at interrogation once "adversary proceedings against him have begun." *Brewer v. Williams*, 430 U.S. 387, 401, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). This principle was violated, Weiss says, by the government's warnings to him that it would not be "in his best interests" to have his attorney Ernest Brookins present during their discussions.[18]

We reject this argument because we find *Massiah* and *Brewer v. Williams* inapplicable to Weiss' situation. First, his discussions with the Strike Force did not amount to interrogation or "adversary proceedings" concerning the present case. When they first contacted Weiss, agents Whitley and Ruhlman cautioned him that they did not want to discuss anything to do with the firearms, bribery, and obstruction charges and did not want him to volunteer any

16. The only prejudice which Weiss alleges resulted in this case from information he gave the Strike Force is that he revealed an instance in which he had bribed a police captain to obtain a liquor permit; this precluded him from offering entrapment as a defense to the bribery and obstruction charges by furnishing the government with evidence of predisposition, *cf. Sherman v. United States*, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958).

Weiss moved to dismiss the bribery and obstruction indictments on the grounds of entrapment. The district court denied the motion, ruling that it presented issues of fact for the jury. Weiss did not raise entrapment as a defense before the jury. Even if evidence Weiss gave to the Strike Force was admissible against him in this case, we find it very difficult to attribute the decision not to raise entrapment to such evidence when tape-recording evidence that Weiss paid $500 to Officer Woodward to sabotage a state indictment on charges of receiving stolen property afforded substantial evidence of predisposition.

17. This does not mean that the government can lure an accused into cooperation by a course of dealing calculated to foster the subjective expectation of an agreement. *See United States v. Battle*, 467 F.2d 569, 570 (5th Cir. 1972) (government cannot lure defendant into plea bargain by false information); *Trotter v. United*

*States*, 359 F.2d 419, 420 (2d Cir. 1966) (plea bargain obtained by flagrant trickery violates defendant's constitutional rights). However, there is no evidence that such conduct occurred in this case. The only evidence that the government held out to Weiss the hope that he would not be prosecuted was the statements by agents Whitley and Ruhlman that, if Weiss cooperated, he might not be indicted. The district court found, however, that Weiss was not justified in relying on these suggestions because he knew that the agents had no authority to make deals with him.

This conclusion was well supported. When he first approached Weiss about cooperating with the Strike Force, Whitley told him that only the Strike Force could make deals. Ruhlman's intimation of the possibility of no indictment was not made until after Weiss had already begun discussions with the Strike Force, and was made in terms of speaking with a Strike Force attorney rather than doing anything himself directly.

18. Weiss' contention that his right to counsel was also violated by the contacts with Officer Woodward which were the basis of the bribery and obstruction of justice charges does not merit discussion. "[A] defendant is not entitled to the presence of counsel while he is committing a crime." *United States v. Anderson*, 523 F.2d 1192, 1196 (5th Cir. 1975).

statements. Attorney Deichert issued a similar warning before beginning their discussions. There is no evidence that anything in those discussions dealt with any of the charges in this case.[19] Thus, it does not appear that the discussions between Weiss and the Strike Force focused on Weiss as a suspect of crimes to which he asserts his sixth amendment rights as a defense. Second, no evidence introduced against Weiss in this case was derived from his meetings with the Strike Force. Even if Weiss' right to counsel were applicable to his meetings with the Strike Force, therefore, we are not presented with the issue raised in *Massiah* and *Brewer v. Williams*, the admissibility of statements obtained in violation of the right to counsel. The remedy for such a violation is the exclusion of the statements. Any violation of his right to counsel at the meetings was accordingly harmless. *Hyler v. United States*, 402 F.2d 558, 561–62 (5th Cir. 1968), *cert. denied*, 394 U.S. 908, 89 S.Ct. 1018, 22 L.Ed.2d 219 (1969).

▐ Of course, the government was treading a narrow line between the merely investigatory and the accusatory in conducting discussions with Weiss while he was about to be indicted on the firearms, bribery and obstruction charges, a line it trod precipitously throughout its close contact with Weiss from the time it identified him as the target of federal firearms charges. But even if the discussions did take place at an accusatory stage, we would have difficulty in finding any actual denial of Weiss' right to counsel. Deichert as well as Whitley and Ruhlman told Weiss he could have counsel present, including Ernest Brookins, and when Deichert specifically asked Weiss if he wished to have counsel present, Weiss replied no. The only evidence that Weiss' decision not to have counsel present was not

voluntary was the evidence that both Whitley and Deichert told him it would not be "in his best interest" to consult Brookins, although he could do so if he wished. In the context of the government's hardball game, with Weiss hoping for some favorable treatment, reference to Weiss' "best interests" might have appeared menacing and conceivably could have deterred him from consulting counsel. The district court found, however, that Whitley, when he first discussed Brookins with Weiss, told him that Brookins was a target of the Strike Force investigation and might have a conflict of interest. Whitley's statements were accurate; the court also found that Brookins was in fact a target and did have a conflict of interest in his representation of Weiss. Thus, Weiss had reason to know what was behind Whitley's and Deichert's warnings about Brookins, and there is no reason to expect that their warnings should have coerced him or misled him in his decision not to have counsel present.

▐ Weiss further argues that even if the government's warnings did not operate to deny him his right to counsel, they were part of an unethical effort to communicate with him without notifying his attorney. As such, he maintains, they form part of a pattern of unethical conduct by the government which demands reversal of his convictions.

Standard 47 of the Canons of Ethics of the State Bar of Georgia provides:

> During the course of his representation of a client, a lawyer shall not communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has prior written consent of the lawyer representing such other party or is authorized by law to do so. A violation of this standard may be punished by public reprimand.

---

**19.** But see note 16, *supra*.

Weiss also contends in this connection that he was prejudiced in that, had he been represented by counsel in his dealings with the Strike Force, he might well have secured a valid plea bargain or immunity agreement. But this conception of prejudice is circular. Our discussion demonstrates that, at least in the

absence of a waiver of constitutional rights or some enforceable promise, there is no *right* to immunity. *Cf. United States v. Rocco*, 587 F.2d 144, 147 n.10 (3d Cir. 1978) (grant of immunity within sole discretion of executive branch). Since Weiss had not established such a right, he is not in a position to assert that it was prejudiced.

See also ABA Code of Professional Responsibility DR 7–104(A)(1).[20] Weiss contends that the Strike Force attorneys violated this standard by contacting him directly without notice to or permission of Ernest Brookins, whom they knew to have been representing him in his criminal matters up to that point. He would have us find that they did so in bad faith in order to gain the maximum advantage over Weiss in their discussions with him and to be able to lead him on with the false promise not to prosecute him on the firearms, bribery, and obstruction charges.

We have already dealt with the contention that Weiss was promised that he would not be prosecuted on the present charges in return for his cooperation and with the behavior of the FBI agents and Strike Force attorneys in that connection. With respect to the ethics of the Strike Force attorneys' contact with Weiss, it does appear that they flirted with violation of Standard 47 of the Canons of Ethics of the Georgia Bar both by approaching Weiss directly when they were about to seek an indictment against him and knew he had been represented by Brookins, and by discouraging him from consulting Brookins. Nevertheless, the district court found that Brookins was in fact a target of the Strike Force investigation, and for this reason and because he also represented potential witnesses against Weiss had an actual conflict of interest in his representation of Weiss. The Strike Force thus had some basis for its concern about the effect which Brookins' presence at an interview with Weiss might have on their investigation. Under the circumstances, we do not think the attorneys' conduct in an investigation of offenses distinct from, though closely related to, the charges in this case, warrants reversal in this case. If similar conduct has not warranted reversal even where evidence subsequently obtained without counsel present

was introduced at trial, *United States v. Crook*, 502 F.2d 1378, 1380–81 (3d Cir. 1974), cert. denied, 419 U.S. 1123, 95 S.Ct. 808, 42 L.Ed.2d 823 (1975); *Mathies v. United States*, 126 U.S.App.D.C. 98, 102–103, 374 F.2d 312, 316–17 (1967), it does not demand reversal here.[21]

The judgment is affirmed.

AFFIRMED.

GODBOLD, Circuit Judge, specially concurring.

I concur in Judge Tuttle's opinion for the court but add this comment.

Part III of the opinion is more tender than I am willing to be with respect to the government attorney's advising Weiss that it would be in his "best interests" to be represented by someone other than his attorney Brookins. I agree that this intrusion by the government into the relation between Weiss and his attorney was not reversible error, but since the government, in both brief and oral argument, insists that this act of its attorney was correct, I think we should say forthrightly that it was wrong. I do not attribute an improper motive to government counsel, but his act was nevertheless improper.

Government counsel has no business advising any citizen—defendant or witness—about his choice of counsel. Where at trial there is a possible conflict of interest on the part of defense counsel that may infect a conviction, the government can, and perhaps is obligated, to call it to the attention of the court. The court can then determine whether a conflict is present and resolve it with due regard for the rights of the parties and the integrity of the criminal justice system. But it is inappropriate for government counsel, in the process of investigating suspected crime, to advise any person represented by counsel—potential defendant, witness, or anybody else—that his cho-

**20.** For a criticism of DR 7–104(A)(1), see Leubsdorf, *Communicating with Another Lawyer's Client: The Lawyer's Veto and the Client's Interests*, 127 U.Pa.L.Rev. 683 (1979).

**21.** We note that the ethical questions posed by the warnings about Brookins are distinct and independent from sixth amendment considerations. *See* Leubsdorf, *Communicating with Another Lawyer's Client: The Lawyer's Veto and the Client's Interests*, supra n.20, 701–02.

sen counsel is not acting in his best interests. The citizen's choice of, and relation with, his attorney is none of the investigating government's business. It does not become the government's business because it fears the citizen will tell his attorney of his conversation with government counsel. It is expected that the client will tell his attorney, and the government should not frustrate the communications incident to the attorney-client relationship. Nor can the government justify its intrusion on the ground it suspects the attorney of wrongdoing related to the matter under investigation. However well founded its suspicion, the government has no authority to chill the citizen's right to the advice of counsel by this kind of Big Brotherism.[1]

Arguably the government was correct this time in the predicate it asserted for giving unsolicited advice to Weiss about his relationship with the attorney of his choice. The next time the government may be wrong. To leave the impression in this case that the governmental intrusion was possibly acceptable leads the next government attorney to persuade himself of reasons for a similar intrusion in the next situation. Therefore, for my part I prefer to make unmistakably clear that this kind of governmental conduct is not acceptable. On its part, the government, rather than attempting to justify an impropriety, should make equally clear that it will not tolerate it.

---

1. For other cases discussing governmental intrusion into the attorney-client relationship, *see*: *Weatherford v. Bursey*, 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977); *U. S. v. Morrison*, 602 F.2d 529 (CA3, 1979) (indictment dismissed because of deliberate attempt to subvert the attorney-client relationship); *Via v. Cliff*, 470 F.2d 271 (CA3, 1972).